IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **PLUS ONE ROBOTICS, INC.** | |
| Plaintiff, | Case No. 5:25-cv-1197 |
| v. | **JURY TRIAL DEMANDED** |
| **ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,** and **ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC.** | |
| Defendants. | |

**PLUS ONE ROBOTICS, INC.'S COMPLAINT
FOR DECLARATORY JUDGEMENT**

Plaintiff Plus One Robotics, Inc. ("Plaintiff" or "Plus One"), by and through its undersigned counsel, hereby submits its Complaint for Declaratory Judgment of Non-infringement against Artificial Intelligence Industry Association, Inc., and Artificial Intelligence Imaging Association, Inc. (collectively, "Defendants" or "AIIA") and alleges as follows:

## NATURE OF THE ACTION

1. This case arises from an unlawful campaign of intimidation by AIIA, a non-practicing patent monetization entity. AIIA has issued a series of escalating threats against Plus One and its customers, falsely accusing Plus One of infringing multiple patents, and seeking to extract licensing fees under threat of reputational harm, customer disruption, and ruinous litigation.

2. In July 2025, AIIA sent a letter demanding that Plus One immediately withdraw its core products from the market—including its widely trusted PickOne Vision Software, Yonder, InductOne, and DepalOne—and pay an ongoing "membership" fee to avoid a lawsuit AIIA valued at $100 million. In this initial letter, AIIA referenced five patents but did not explain its basis for alleging infringement. Since then, AIIA has doubled down. In follow-up communications, AIIA explicitly threatened to target Plus One's customers, to leak purported "technical insights" to bolster another pending lawsuit entirely unrelated to AIIA, and to use litigation as leverage to scare off Plus One partners. At the same time, AIIA has refused to articulate how any Plus One product meets any claim of any AIIA patent, much less discuss why Plus One products do not infringe and why $100 million in damages is unsupportable.

3. On August 12, 2025, AIIA's intentions became even clearer when it drafted a complaint for filing in the Southern District of New York—an improper venue where Plus One has no place of business—accusing Plus One of infringing three patents, none of which apply to

- 1 -

Plus One's innovative robotic vision systems. The draft complaint sought over $100 million in damages and sweeping injunctive relief—not to protect genuine innovation, but to weaponize litigation costs and sow fear among Plus One's partners and customers.

4. AIIA's tactics are a textbook shakedown. AIIA does not design, manufacture, or sell robotics products. It does not compete in Plus One's markets. Instead, AIIA seeks to extract payments by threatening to disrupt the businesses of legitimate companies that rely on Plus One's technology. In its own words, AIIA has threatened that "no investor in a Series D round will touch a company facing multiple patent disputes" and that it will send letters to all Plus One customers demanding they stop using Plus One's products. Such threats are designed not to vindicate intellectual property rights, but to chill innovation, frighten customers, and coerce settlement.

5. Plus One therefore brings this declaratory judgment action to protect itself and its valued customers from AIIA's baseless assertions. Plus One seeks a declaration that it does not infringe any claim of the patents asserted by AIIA, that AIIA is not entitled to any damages or injunctive relief, and that AIIA's campaign of threats and coercion are objectively baseless.

## PARTIES

6. Plaintiff Plus One Robotics, Inc. is a corporation organized under the laws of Delaware with its principal place of business in San Antonio. Plus One's office is located at 639 Billy Mitchell Blvd., Suite 185, San Antonio, Texas.

7. Upon information and belief, Defendant Artificial Intelligence Industry Association, Inc., is a Florida corporation with a principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637.

8. Upon information and belief, Defendant Artificial Intelligence Imaging Association, Inc., is a Florida corporation with a principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637.

## JURISDICTION AND VENUE

9. This is an action for declaratory relief regarding five patents, namely, U.S. Patent Nos. 11,257,272; 9,930,315; 10,075,693; 9,948,919; and 10,979,693 (the "Patents-in-Suit").

10. The Court has subject matter jurisdiction over the declaratory-judgment claims presented in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these claims arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11. The Court has personal jurisdiction over AIIA in this action because AIIA has directed and continues to direct acts to this District, including acts pertaining to the Patents-in-Suit and acts giving rise to the claims for relief asserted in this action. For example, AIIA addressed multiple letters, *e.g.*, letters dated June 12, 2025, and July 18, 2025, to Plus One's CEO in San Antonio, offering its membership services. Likewise, upon information and belief, AIIA monitors legal proceedings pending in this District and uses that information to advance its patent monetization efforts against local companies. For instance, AIIA tracked patent litigation in this District pending against Plus One (specifically, *Fortna Systems, Inc. v. Plus One Robotics, Inc.*, WDTX Case No. 5:24-cv-1274-OLG-HJB), and repeatedly attempted to leverage those unrelated proceedings to extort unjustified royalties from Plus One. For example, AIIA threatened to leak information to the plaintiff in the other case and to enlist Fortna to pursue additional claims against Plus One, even though AIIA has no apparent connection with that lawsuit or with Fortna. Furthermore, AIIA threatened to baselessly interfere with Plus One's investments and customers,

including those based in Texas and this District.  Accordingly, the facts giving rise to this complaint arose here and the harm of AIIA's wrongful conduct is felt here.

12.     Further, AIIA has continuous and systematic contacts within the State of Texas, including this District, and has purposefully directed business activities into and in this District.  For example, AIIA employs individuals based in Texas.  For example, Mr. Ray Jackson is the Chief Enforcement Officer of AIIA, and the Chief Litigation Partner of AIIA's parent R Hewen & Co, and according to his public LinkedIn profile, he is based in The Colony, Texas.  Notably, Mr. Jackson participated personally in meetings with Plus One where AIIA emphasized that, given other (unrelated) litigation pending in this District, Plus One should agree to pay unjustified royalties to AIIA to avoid litigating on two fronts.  As another example, upon information and belief, AIIA's parent has engaged Dallas-based attorney Mr. Stephen Liu to advise on its patent licensing and enforcement business.  Likewise, upon information and belief, AIIA monitors and acquires patents relevant to artificial intelligence research and development activity conducted within Texas.  For instance, AIIA's website links to research regarding "Use of synthetic images for training a deep learning model for weed detection and biomass estimation in cotton," whose primary and second authors are, upon information and belief, affiliated with Texas A&M University, College Station, TX, 77843, USA.  In addition, upon information and belief, AIIA has targeted others in Texas and in this forum with letters.  For example, upon information and belief, AIIA addressed offers to sell its proposed membership to other Texas entities, such as Topaz Labs, LLC, a company headquartered in Dallas, Texas.

## PATENTS-IN-SUIT

13.     Defendant Artificial Intelligence Industry Association, Inc., claims to be the owner of the right, title, and interest in and to, including the right to sue and collect damages for past

infringement of, U.S. Patent No. 11,257,272 ("the '272 Patent") titled "Systems and Methods for Generating Labeled Image Data for Machine Learning Using a Multi-Stage Image Processing Pipeline," which issued on February 22, 2022.  Upon information and belief, it is unclear which (if any) of Artificial Intelligence Industry Association, Inc., or Artificial Intelligence Imaging Association, Inc. is the true owner of this patent, and as such, both are named as defendants in this case.  A true and correct copy of the '272 Patent is attached as **Exhibit A**.

14. Defendant Artificial Intelligence Industry Association, Inc., claims to be the owner of the right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 9,930,315 ("the '315 Patent") titled "Stereoscopic 3D Camera for Virtual Reality Experience," which issued on March 27, 2018.  Upon information and belief, it is unclear which (if any) of Artificial Intelligence Industry Association, Inc., or Artificial Intelligence Imaging Association, Inc. is the true owner of this patent, and as such, both are named as defendants in this case.  A true and correct copy of the '315 Patent is attached as **Exhibit B**.

15. Defendant Artificial Intelligence Industry Association, Inc., claims to be the owner of the right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 10,075,693 ("the '5693 Patent") titled "Embedding Calibration Metadata Into Stereoscopic Video Files," which issued on March 27, 2018.  Upon information and belief, it is unclear which (if any) of Artificial Intelligence Industry Association, Inc., or Artificial Intelligence Imaging Association, Inc. is the true owner of this patent, and as such, both are named as defendants in this case.  A true and correct copy of the '5693 Patent is attached as **Exhibit C**.

16. Defendant Artificial Intelligence Industry Association, Inc., claims to be the owner of the right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 9,948,919 ("the '919 Patent") titled "Stereoscopic 3D camera for

virtual reality experience," which issued on April 17, 2018. Upon information and belief, it is unclear which (if any) of Artificial Intelligence Industry Association, Inc., or Artificial Intelligence Imaging Association, Inc. is the true owner of this patent, and as such, both are named as defendants in this case. A true and correct copy of the '919 Patent is attached as **Exhibit D**.

17. Defendant Artificial Intelligence Industry Association, Inc., claims to be the owner of the right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 10,979,693 ("the '9693 Patent") titled "Stereoscopic 3D camera for virtual reality experience," which issued on April 13, 2021. Upon information and belief, it is unclear which (if any) of Artificial Intelligence Industry Association, Inc., or Artificial Intelligence Imaging Association, Inc. is the true owner of this patent, and as such, both are named as defendants in this case. A true and correct copy of the '9693 Patent is attached as **Exhibit E**.

18. Thus, the "Patents-in-Suit" collectively refers to the '272 Patent, the '315 Patent, the '5693 Patent, the '919 Patent and the '9693 Patent.

## DEFENDANT'S WRONGFUL CONDUCT

19. On or about June 12, 2025, AIIA sent a letter addressed to Plus One's CEO in San Antonio. In the letter, AIIA asserted that it owns a portfolio of patents that "broadly cover" the creation, use, and application of synthetic images for machine learning. AIIA stated, without identifying any evidence, that "[i]t appears" that Plus One is utilizing AIIA's patents. AIIA did not include claim charts or otherwise explain why it believes Plus One is infringing, but attached a lengthy list of alleged "use cases for the AIIA Patent Portfolio."

20. On or about July 18, 2025, AIIA sent another letter addressed to Plus One's CEO in San Antonio. The letter's subject line read: "FINAL DEMAND BEFORE FILING $100 MILLION CLAIM." Again, AIIA's letter did not provide any evidentiary basis for AIIA's

exorbitant demand. Nonetheless, AIIA asserted that "you are infringing, at a minimum, five (5) United States patents," listing the Patents-in-Suit. Further, AIIA's letter demanded written confirmation that Plus One has stopped selling all of its products, together with a written statement "detailing the entirety of [Plus One's] commercial endeavors" relating to AI products. AIIA's letter insisted that only after receiving this confirmation and statement would AIIA discuss an amicable resolution.

21. AIIA also threatened that, besides suing Plus One "directly," it would "join in a lawsuit many of [Plus One's] downstream customers, retailers, and distributors." Underscoring that its $100 million valuation is baseless, AIIA stated that it would license its patents for a one-time upfront payment of $100,000, followed by monthly payments of $10,000 for five years. As before, these demands were arbitrary and untethered to any facts or evidence regarding Plus One's actual use (or extent of use) of AIIA's alleged inventions.

22. On July 28, 2025, Plus One responded to AIIA through Plus One counsel. In its response, Plus One explained why it did not (and does not) infringe AIIA's patents, and requested that AIIA provide claim charts supporting its infringement claim.

23. On or about August 11, 2025, AIIA responded to Plus One's counsel. AIIA refused to furnish any evidence in support of its claims. Instead, AIIA stated that it "will not be engaging in any discussion regarding discovery at this stage." AIIA reiterated its offer to license its patents for a total of $700,000 (on the terms previously proposed), while threatened that failure to accept the terms would lead to "litigation seeking damages in excess of $100 million." Despite its offers for licensing the patents, AIIA noted that it would separately file claims against Plus One's customers and seek injunctive relief.

24. On August 29, 2025, Plus One counsel wrote to AIIA and offered to discuss AIIA's claims live. The parties agreed to schedule a videoconference for September 9, 2025.

25. On September 8, 2025, one day prior to the parties' discussion, AIIA sent Plus One a draft complaint that baselessly accused Plus One of infringing the '315 Patent, the '5693 Patent, and the '272 Patent, but not the other two previously identified.

26. On September 9, 2025, the parties met via videoconference but were unable to reach agreement. Subsequently, the parties scheduled a second videoconference for September 18, 2025. That meeting also did not result in resolution of AIIA's claims.

27. Following the September 18, 2025, meeting, AIIA sent Plus One an email emphasizing that Plus One "is already engaged in litigation with Fortna Systems in the Western District of Texas." AIIA's email further threatened that "Plus One can't afford a two front patent war," and that "[n]o investor in a Series D round will touch a company facing multiple patent disputes." AIIA further threatened that AIIA is "confident that Fortna would be very interested to learn how Plus One's vision systems integrate with the accused InductOne conveyor system - technical insights [AIIA] could provide that would strengthen [Fortna's] infringement case; settling with [AIIA] now keeps that information confidential." Slightly lowering its earlier demand of $700,000, AIIA offered to license its patents for "a one-time fee of $675,000." AIIA had demanded an answer by end of day Friday, September 19, 2025.

28. Because AIIA's one-day turnaround was unreasonable, on September 19, 2025, Plus One asked AIIA for additional time to consider AIIA's position and offer.

29. On September 21, 2025, AIIA wrote that its Board of Directors has "instructed [AIIA's] legal team to proceed with filing the $100 million complaint against Plus One this Wednesday, September 24, 2025, absent a settlement by Tuesday evening." AIIA further wrote

that, "once the complaint is filed, letters will be sent to all of [Plus One's] customers demanding that they cease and desist from any further use of the infringing technology." In addition, AIIA stated that its "Board has authorized immediate discussions with Fortna Inc. regarding their interest in acquiring our claims against Plus One, together with a license to use AIIA patents across your client's customer base."

30. Plus One now brings this action for declaratory judgment in light of AIIA's baseless, escalating threats against Plus One and its customers, AIIA's total refusal to engage on the merits or evidence, and its focus on an unrelated litigation involving Plus One and an unrelated third party to coerce a settlement.

## CAUSES OF ACTION

### COUNT I: NON-INFRINGEMENT OF THE '272 PATENT

31. Plus One restates and incorporates by reference each allegation of paragraphs 1 to 30 above.

32. Claim 17 of the '272 Patent a method for generating synthetic image data that requires an object database including 3D models and a library of texture materials; constructing, by a computer graphics engine, a first synthetic image scene; selecting a background image from the database of background images; populating a foreground portion of the first synthetic image scene with 3D models; covering the 3D model with a texture material selected from the library of texture materials; incrementally varying at least one parameter included in the camera settings file to provide a first series of camera views, wherein each camera view has a unique image plane; and using a training data comprising synthetic image scenes to train a machine learning system.

33. AIIA has asserted, at least through its correspondence dated September 9, 2025, that Plus One infringes Claim 17 of the '272 Patent.

34. Plus One's accused products do not use an object database including 3D models and a library of texture materials; construct a synthetic image scene; select a background image from the database of background images; populate a foreground portion of a synthetic image scene with 3D models; cover the 3D model with a texture material selected from the library of texture materials; provide a first series of camera views, wherein each camera view has a unique image plane; or use a training data comprising synthetic image scenes to train a machine learning system, as Claim 17 of the '272 Patent requires. For example, Plus One's products use data derived from real images, not synthetic image scenes, to train its machine learning models. Further, because Plus One systems have static cameras, Plus One does not use a series of camera views with each view having a unique image plane.

35. Therefore, Plus One has not infringed and does not infringe at least Claim 1 of the '272 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the accused products. Plus One is thus entitled to a declaration of non-infringement.

**COUNT II: NON-INFRINGEMENT OF THE '315 PATENT**

36. Plus One restates and incorporates by reference each allegation of paragraphs 1 to 30 above.

37. Claim 1 of the '315 Patent is a method for recording stereoscopic 3D video that requires combining recorded sequences of stereoscopic images into a stereoscopic video sequence; embedding calibration information into the stereoscopic video sequence by embedding a time varying calibration information once per frame of the stereoscopic video sequence; combining multiple stereoscopic video sequences recorded by multiple stereoscopic recording devices; and

embedding calibration information from the multiple stereoscopic video sequences into each frame of a combined stereoscopic video sequence using a video steganography process.

38. AIIA has asserted, at least through its correspondence dated September 9, 2025, that Plus One infringes Claim 1 of the '315 Patent.

39. Plus One's accused products do not practice a method for recording stereoscopic 3D video that requires combining recorded sequences of stereoscopic images into a stereoscopic video sequence; embedding calibration information into the stereoscopic video sequence by embedding a time varying calibration information once per frame of the stereoscopic video sequence; combining multiple stereoscopic video sequences recorded by multiple stereoscopic recording devices; and embedding calibration information from the multiple stereoscopic video sequences into each frame of a combined stereoscopic video sequence using a video steganography process, as Claim 1 of the '315 Patent requires.  For example, Plus One's products rely on analyzing static images, rather video, so Plus One's products do not record stereoscopic 3D video, combine recorded sequences of stereoscopic images into a stereoscopic video sequence, embed time varying calibration information, or combine multiple stereoscopic video sequences.

40. Therefore, Plus One has not infringed and does not infringe at least Claim 1 of the '315 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the accused products.  Plus One is thus entitled to a declaration of non-infringement.

**COUNT III: NON-INFRINGEMENT OF THE '5693 PATENT**

41. Plus One restates and incorporates by reference each allegation of paragraphs 1 to 30 above.

42. Claim 1 of the '5693 Patent is a computerized system for recording stereoscopic three-dimensional (3D) video that requires a plurality of contemporaneous metadata feeds, wherein a metadata feed comprises a time sequenced set of metadata; embedding, in real-time as the stereoscopic video feed is recorded, the stereoscopic video feed with the plurality of contemporaneous metadata feeds; the plurality of contemporaneous metadata feeds is embedded into the stereoscopic video feed by encoding the contemporaneous metadata feeds into the subtitles or closed captioning metadata fields of the video file format.

43. AIIA has asserted, at least through its correspondence dated September 9, 2025, that Plus One infringes Claim 1 of the '5693 Patent.

44. Plus One's accused products do not use a plurality of contemporaneous metadata feeds, wherein a metadata feed comprises a time sequenced set of metadata; embed, in real-time as the stereoscopic video feed is recorded, the stereoscopic video feed with the plurality of contemporaneous metadata feeds; or embedded the plurality of contemporaneous metadata feeds into the stereoscopic video feed by encoding the contemporaneous metadata feeds into the subtitles or closed captioning metadata fields of the video file format, as Claim 1 of the '5693 Patent requires. For example, Plus One's products do not record video, do not use a time sequenced set of metadata, and do not embed any data into videos by encoding contemporaneous metadata feeds into the subtitles or closed captioning metadata fields.

45. Therefore, Plus One has not infringed and does not infringe at least Claim 1 of the '5693 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the accused products. Plus One is thus entitled to a declaration of non-infringement.

## COUNT IV: NON-INFRINGEMENT OF THE '919 PATENT

46. Plus One restates and incorporates by reference each allegation of paragraphs 1 to 30 above.

47. Claim 1 of the '919 Patent requires receiving a stereoscopic video sequence by a stereoscopic video playback device; determining a fisheye distortion parameter for each display pixel of the stereoscopic video playback device; and rendering stereoscopic video on a stereoscopic display of the stereoscopic video playback device.

48. AIIA has asserted, at least through its correspondence dated July 18, 2025, that Plus One infringes the claims of the '919 Patent.

49. Plus One's accused products do not receive a stereoscopic video sequence by a stereoscopic video playback device; determine a fisheye distortion parameter for each display pixel of the stereoscopic video playback device; or render stereoscopic video on a stereoscopic display of the stereoscopic video playback device. Plus One products are not video playback devices, do not record video, or use fisheye lens.

50. Therefore, Plus One has not infringed and does not infringe at least Claim 1 of the '919 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the accused products. Plus One is thus entitled to a declaration of non-infringement.

## COUNT V: NON-INFRINGEMENT OF THE '9693 PATENT

51. Plus One restates and incorporates by reference each allegation of paragraphs 1 to 30 above.

52. Claim 1 of the '9693 Patent is a method for filtering motion data that requires comparing the first and second set of frames to characterize a first motion; filtering the first motion

- 13 -

to generate a filtered motion; calculating a first matrix based on the filtered motion; calculating a second matrix representing a mapping from a three-dimensional space to a two-dimensional space associated with a plane of the stereoscopic camera in the absence of motion; and applying the first matrix, second matrix, and third matrix together in a matrix operation to the reference frame to obtain a modified reference frame.

53. AIIA has asserted, at least through its correspondence dated July 18, 2025, that Plus One infringes the claims of the '9693 Patent.

54. Plus One's accused products do not compare the first and second set of frames to characterize a first motion; filter the first motion to generate a filtered motion; calculate a first matrix based on the filtered motion; calculate a second matrix representing a mapping from a three-dimensional space to a two-dimensional space associated with a plane of the stereoscopic camera in the absence of motion; or apply the first matrix, second matrix, and third matrix together in a matrix operation to the reference frame to obtain a modified reference frame. Plus One's accused products use static cameras, so there is no motion to filter out.

55. Therefore, Plus One has not infringed and does not infringe at least Claim 1 of the '9693 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the accused products. Plus One is thus entitled to a declaration of non-infringement.

## DEMAND FOR JURY TRIAL

56. Plus One requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

Plus One respectfully requests that judgment be entered:

i)      Declaring that Plus One does not infringe at least the identified claims of the Patents-in-Suit, directly or indirectly, literally or under the doctrine of equivalents, by the making, using, selling, offering to sell, and/or importing of the Plus One Accused Products

ii)     Awarding Plus One its reasonable attorneys' fees under 35 U.S.C. § 285; and

iii)    Awarding any other remedy or relief to which Plus One may be entitled and which is deemed appropriate by the Court.


Dated: September 23, 2025            Respectfully submitted,

*/s/ Ryan Tyz*
Ryan Tyz (admitted Jan. 30, 2025)


RYAN TYZ (CA Bar No. 234895)
*Admitted in WDTX on Jan. 30, 2025*
ryan@tyzlaw.com
UDIT SOOD (CA Bar No. 308476)
*Pro hac vice* pending
udit@tyzlaw.com
SEAN APPLE (CA Bar No. 305692)
*Pro hac vice* pending
sapple@tyzlaw.com

**TYZ LAW GROUP PC**
1 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: 415.868.6900

*Attorneys for Plus One Robotics, Inc.*