## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

### Case No.: 5:25-CV-01197-OLG

PLUS ONE ROBOTICS, INC.,

    Plaintiff,

v.

ARTIFICIAL INTELLIGENCE INDUSTRY
ASSOCIATION, INC., and ARTIFICIAL
INTELLIGENCE IMAGING
ASSOCIATION, INC.,

    Defendants.

ARTIFICIAL INTELLIGENCE INDUSTRY
ASSOCIATION, INC., and ARTIFICIAL
INTELLIGENCE IMAGING
ASSOCIATION, INC.,

    Counter-Plaintiffs,

v.

PLUS ONE ROBOTICS, INC.

    Counter-Defendant.

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

    Defendants Artificial Intelligence Industry Association, Inc. and Artificial Intelligence Imaging Association, Inc. (collectively, "AIIA"), by and through undersigned counsel, hereby answer Plaintiff Plus One Robotics, Inc.'s ("Plus One") Complaint for Declaratory Judgment (Dkt. 1) and assert counterclaims as follows:

1

## ANSWER TO COMPLAINT
### Nature of the Action

1.      Denied. AIIA's communications to Plus One were lawful assertions of its patent rights based on substantial evidence of infringement. Under 35 U.S.C.A. § 271(d), patent owners are explicitly authorized to enforce their patent rights against infringement or contributory infringement without being deemed guilty of misuse or illegal extension of those rights. AIIA is an industry association promoting accountability in artificial intelligence, not a "non-practicing patent monetization entity." Plus One's characterization of AIIA's licensing efforts as "intimidation" is false and defamatory. Notably, Plus One has a pattern of conduct of knowingly and willfully violating patents as demonstrated by this counterclaim and by the *Fortna Systems, Inc. v. Plus One Robotics, Inc.* lawsuit, Civil Action No. 5:24-cv-01274 (W.D. Tex.), filed November 6, 2024, attached as Exhibit B.

2.      Denied. AIIA's July 2025 letter accurately identified infringement of five United States patents by Plus One's products and sought voluntary licensing to avoid litigation. The letter provided a reasonable basis for infringement allegations, consistent with the requirements for proper notice under 35 U.S.C.A. § 287(a), which allows patent owners to give notice to alleged infringers as a prerequisite for recovering damages. As established in *Massachusetts Institute of Technology v. Abacus Software, Inc.*, No. 501CV344, 2004 WL 5268123, at *71 (E.D. Tex. Aug. 4, 2004, actual notice of infringement requires informing the recipient of the identity of the patent, the activity believed to be infringing, and a proposal to abate the infringement, whether by license or otherwise—all of which AIIA's letter properly

contained. Plus One's products demonstrably infringe the Asserted Patents through their use of synthetic image generation for training machine learning models, as confirmed by Plus One's own CTO Shaun Edwards in a public AWS re:MARS 2022 presentation. This follows Plus One's pattern of willful patent infringement, as evidenced by Fortna's pending lawsuit alleging infringement of U.S. Patent Nos. 11,753,256 and 12,059,803.

3.      Denied. AIIA prepared a draft complaint for potential filing based on Plus One's continued infringement after notice. The Southern District of New York is also a proper venue given Plus One's nationwide sales and business contacts. Federal patent law protects AIIA's right to pursue enforcement in any proper venue. As held in *PrinterOn Inc. v. BreezyPrint Corp.*, 93 F.Supp.3d 658, 702 (S.D. Tex. 2015), state tort claims against a patent holder based on enforcing a patent in the marketplace are preempted by federal patent laws unless the claimant can show that the patent holder acted in "bad faith" in the publication or enforcement of its patent—which Plus One cannot demonstrate here.

4.      Denied. AIIA is an established trade association that enforces legitimate patent rights. AIIA's communications were proper notices of infringement and offers to license, protected under the *Noerr-Pennington doctrine*. As established in *Rohm and Haas Co. v. Dawson Chemical Co., Inc.*, 557 F.Supp. 739, 842, (S.D.Tex. 1983), letters sent by patent counsel to inform others of the patentee's intent to enforce its patent rights are protected, provided they are prepared and distributed in good faith. Plus One's mischaracterization of standard

patent enforcement as a "shakedown" is both false and defamatory. As held in *DP Wagner Mfg. Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445, 460 (S.D. Tex. 2006), federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith—a showing Plus One cannot make.

5.      Denied. Plus One infringes AIIA's patents and is not entitled to any declaratory relief. Infringement allegations are "objectively baseless" only if "no reasonable litigant could realistically expect success on the merits." *PrinterOn Inc. v. BreezyPrint Corp.*, 93 F.Supp.3d 658, 702 (S.D. Tex. 2015). Here, AIIA's infringement allegations are supported by substantial evidence, including Plus One's own public admissions.

## Parties

6.      Admitted that Plus One Robotics, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas, at 639 Billy Mitchell Blvd., Suite 185.

7.      AIIA states that Artificial Intelligence Industry Association, Inc. is a Florida corporation with its principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637, and is the proper owner and assignee of the Asserted Patents.

8.      AIIA states that upon information and belief, there is no separate entity called Artificial Intelligence Imaging Association, Inc. Any references to such entity should be deemed references to Artificial Intelligence Industry Association, Inc.

## Jurisdiction and Venue

9-12.   AIIA admits this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and personal jurisdiction over AIIA. AIIA denies that Plus One is entitled to declaratory relief, given Plus One's infringement.

## Patents-in-Suit

13-18.  AIIA admits ownership of U.S. Patent Nos. 11,257,272; 9,930,315; 10,075,693; 9,948,919; and 10,979,693. AIIA states that true and correct copies of these patents are matters of public record.

## Defendant's Wrongful Conduct

19-30.   Denied. AIIA's communications were proper patent enforcement activities protected under the *Noerr-Pennington doctrine* and federal patent law. AIIA identified specific patents, provided notice of infringement, and offered licensing terms. Plus One's refusal to engage substantively and its publication of false statements to the media constitute the only wrongful conduct in this matter. As addressed in *Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F.Supp.2d 602, 604 (E.D. La.  2013), allegations that patent enforcement claims are made in bad faith require proof that the claims are objectively false—a burden that Plus One cannot meet given its own admissions of using the accused technology. Plus One's pattern of conduct of knowingly and willfully violating patents, as demonstrated by this counterclaim and by the Fortna claim, shows Plus One's bad faith.

5

## Causes of Action (Counts I-V)

31-55. Denied. Plus One infringes all asserted claims of the Patents-in-Suit. Specifically:

- Plus One's PickOne Vision Software generates synthetic image data using virtual 3D scenes, databases of backgrounds, 3D models, textures, and camera settings to train machine learning models, directly infringing the '272 Patent.

- Plus One's systems employ stereoscopic 3D cameras with calibration metadata embedding for robotic vision tasks, infringing the '315 and '693 Patents.

- Plus One's characterization that it uses only "real images" is demonstrably false, as confirmed by its Chief Technology Officer's ("CTO") public admission of generating "tens of thousands of labeled synthetic package images."

56.    AIIA demands a jury trial on all triable issues.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE
### (Failure to State a Claim Upon Which Relief Can Be Granted)

Under Fed. R. Civ. P. 12(b)(6), Plus One's Complaint fails to state a claim upon which relief can be granted. Rule 8(a) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8. Courts have held that complaints failing to meet this standard are subject to dismissal.

In *Medical Components, Inc. v. Osiris Medical*, Inc., 226 F.Supp.3d 753, 762 (W.D. Tex. 2016), the court emphasized that plaintiffs must make allegations with specificity to support claims of non-infringement. Similarly, in *Chamfer Engineering, Inc. v. Tapco Int'l, Inc.*, 498 F.Supp. 129, 133 (S.D.Tex. 1980), a motion to dismiss for failure to state a claim was considered valid when the complaint lacked sufficient allegations to establish a claim. Plus One's Complaint lacks the requisite specificity and factual allegations necessary to establish its declaratory judgment claims, particularly given its documented infringement and pattern of willful patent violations.

<u>**SECOND DEFENSE**</u>
**(Plus One's Infringement Bars Declaration of Non-Infringement)**

Plus One infringes the Asserted Patents, barring any declaration of non-infringement. Under 28 U.S.C.A. § 2201(a), courts may declare rights only in cases of "actual controversy." In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), the Supreme Court clarified that an actual controversy exists when a party is coerced into abandoning its rights or risking liability.

Additionally, *Research in Motion Ltd. v. Visto Corp.*, 457 F.Supp.2d 708, 711 (N.D. Tex. 2006), held that subject matter jurisdiction exists for declaratory judgment actions when the patentee's conduct creates a reasonable apprehension of infringement litigation. Here, Plus One's documented infringement precludes any

7

declaration of non-infringement. A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement. *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 643, 135 S.Ct. 1920, 191 L.Ed.2d 883 (2015). Plus, One cannot seek declaratory relief while actively infringing on AIIA's valid patents, as demonstrated here and consistent with its pattern of willful infringement shown in the Fortna litigation.

## THIRD DEFENSE
### (No Actual Controversy Exists for Non-Infringement)

Given Plus One's documented infringement, no actual controversy exists for non-infringement. The defense aligns with the requirement under 28 U.S.C.A. § 2201(a) that declaratory judgment actions must involve a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

In *National Presort, Inc. v. Bowe Bell + Howell Co.*, 663 F.Supp.2d 505, 511 (N.D. Tex. 2009), the court dismissed a declaratory judgment action for lack of subject matter jurisdiction, finding no actual controversy where the defendant had not taken affirmative steps to create a reasonable apprehension of litigation. Similarly, *Poly-America, L.P. v. Stego Industries, L.L.C.*, 694 F.Supp.2d 600, 606 (N.D. Tex. 2010), emphasized that an actual controversy requires affirmative acts by the patentee that put the declaratory judgment plaintiff in a position of either pursuing arguably illegal behavior or abandoning its rights. Here, Plus One's actual infringement negates any controversy regarding non-infringement.

## FOURTH DEFENSE

**(Unclean Hands)**

Plus One comes before this Court with unclean hands, having made material misrepresentations regarding its non-use of synthetic images. The doctrine of unclean hands is an equitable defense that bars a party from seeking relief when it has engaged in misconduct related to the subject matter of the litigation.

In *Staton Techiya, LLC v. Samsung Electronics Co., Ltd.*, 742 F.Supp.3d 602, 656 (E.D. Tex. 2024), the court applied the unclean hands doctrine to dismiss patent claims where the patentee had acted with inequitable conduct. Additionally, *Handshoe v. Perret*, 270 F.Supp.3d 915, 932 (S.D. Miss. 2017), noted that the unclean hands doctrine historically underpins defenses barring culpable plaintiffs from prevailing.

Plus One's false statements to this Court and the public, coupled with its pattern of conduct of knowingly and willfully violating patents as demonstrated by this counterclaim, and by the Fortna claim, constitute unclean hands barring relief.

## FIFTH DEFENSE
**(Judicial Estoppel)**

Given its public admissions, Plus One should be estopped from denying its use of synthetic image generation. Judicial estoppel prevents a party from asserting a position in litigation that contradicts its prior statements or actions. Fed. R. Civ. P. 8(c) explicitly lists estoppel as an affirmative defense.

The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149

L.Ed.2d 968 (2001). Specifically, judicial estoppel is designed to "prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous proceeding." 18 Moore's Federal Practice § 134.30 (3d ed. 2008). In *New Hampshire v. Maine,* 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the Supreme Court recognized that while the circumstances under which a court might invoke judicial estoppel will vary, three factors typically inform the decision: (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was mislead and; (3) whether the party advancing the inconsistent position would derive an unfair advantage. This principle ensures consistency and prevents manipulation of the judicial process. Plus One's CTO's public admission of using synthetic image generation directly contradicts Plus One's current litigation position, warranting application of judicial estoppel.

## SIXTH DEFENSE
### (Waiver)

Plus One has waived any defenses by publicly admitting to using the accused technology. Waiver is an affirmative defense under Rule 8(c), which applies when a party voluntarily relinquishes a known right.

In *Deniece Design, LLC v. Braun*, 953 F.Supp.2d 765, 775 (S.D. Tex. 2013), the court acknowledged waiver as a defense to patent enforcement claims, particularly where the patentee's conduct indicated an intentional relinquishment

of rights. Similarly, *Headwater Research, LLC v. Verizon Communications, Inc.*, 2025 WL 1921237 at *2 (E.D. Tex. 2025), involved allegations of waiver in the context of patent misuse. Plus One's public admissions constitute a waiver of its non-infringement defenses.

## SEVENTH DEFENSE
### (Pattern of Willful Infringement)

Plus One has a demonstrated pattern of knowingly and willfully violating patents, as evidenced by both this counterclaim and the pending *Fortna Systems, Inc. v. Plus One Robotics, Inc.* litigation (Case No. 5:24-cv-01274-OLG-HJB), in which Plus One is accused of infringing U.S. Patent Nos. 11,753,256 and 12,059,803. This pattern of infringement undermines Plus One's claims of good faith and supports AIIA's enforcement actions.

## EIGHTH DEFENSE
### (Use of communications made during settlement
### negotiations should be barred)

Plus One aims to utilize various statements made during negotiations for a settlement. Initially, Plus One, through its legal counsel, arranged a meeting to discuss potential settlement terms with AIIA. The meeting concluded with a request for time to consult with Plus One to formulate an initial settlement offer. Following that, Plus One reached out to AIIA to schedule another conference to discuss the settlement and subsequently made a settlement offer. However, AIIA rejected this

offer and provided a counteroffer, explaining their reasons for preferring to settle before a lawsuit was filed. AIIA also outlined the potential consequences a lawsuit could have on Plus One. It is important to note that AIIA's assertive negotiations were purely part of the negotiation process.  The policy underlying  Federal Rule of Evidence 408 is to foster free and candid discussions during settlement negotiations. Courts have recognized that allowing settlement communications to be used against a party would have a chilling effect on future negotiations, thereby undermining the rule's purpose. This principle was highlighted in *Lyondell Chemical Co. v. Occidental Chemical Corp.*, where the court noted that the exclusion of settlement evidence is critical to promoting voluntary settlements, particularly in complex litigation… *Lyondell Chemical Co. v. Occidental Chemical Corp.*, 608 F.3d 284, 294 (5th Cir. 2010).  Moreover, several cases illustrate the application of Rule 408(a)(2).  One such case is *National Presort, Inc. v. Bowe Bell + Howell Co.* In this case, the court excluded a settlement letter under Rule 408, emphasizing the policy of promoting settlement negotiations by removing the fear that communications made in furtherance of negotiation will later be used against a party.  *National Presort, Inc. v. Bowe Bell + Howell Co.*, 663 F.Supp.2d 505, 507-08 (N.D.Tex. 2009). Similarly, in *In re Rice*, the court excluded evidence of settlement negotiations, noting that litigation need not have commenced for Rule 408 to apply, but there must be an actual dispute or difference of opinion.  *In re Rice*, 526 B.R. 631, 643 (Bankr.N.D.Miss.2015).

Even assuming, *arguendo,* that Plus One's claims of coercion are valid, which AIIA adamantly denies, the issue of coercion during settlement discussions raises questions about the enforceability of the settlement agreement rather than the admissibility of statements under Rule 408. In *F.D.I.C. v. White*, the court considered affidavits alleging coercion during mediation but noted that mediation communications are privileged, suggesting that such evidence may be inadmissible (*F.D.I.C. v. White*, 76 F.Supp.2d 736, 737 (N.D.Tex. 1999). This case indicates that allegations of coercion will not directly impact the admissibility of settlement communications under Rule 408 but could affect the validity of the settlement agreement itself.

AIIA reserves the right to assert additional defenses as discovery proceeds.

## COUNTERCLAIMS

AIIA asserts the following counterclaims against Plus One as a counter-defendant.

## PARTIES TO COUNTERCLAIMS

57.    Counter-Plaintiff AIIA is a Florida trade association dedicated to advancing transparency and accountability in artificial intelligence, with its principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637.

58.    Counter-Defendant Plus One Robotics, Inc. is a Delaware corporation with its principal place of business at 639 Billy Mitchell Blvd., Suite 185, San Antonio, Texas 78226.

## JURISDICTION AND VENUE

59.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) (patent claims), 1332 (diversity), and 1367 (supplemental jurisdiction for state law claims).

60.    This Court has personal jurisdiction over all counter-defendants who have appeared in this action.

61.    Venue is proper under 28 U.S.C. § 1391(b) as Plus One resides in this District and substantial events giving rise to the claims occurred here.

## FACTUAL BACKGROUND

62.    In its Complaint and public statements, Plus One—through counsel—has repeatedly and falsely denied using synthetic image datasets for training its machine learning systems, claiming exclusive reliance on "real images."

63.    This representation is demonstrably false. At the AWS re:MARS 2022 conference, Plus One's Chief Technology Officer Shaun Edwards publicly presented on Plus One's use of Amazon SageMaker Ground Truth, explicitly stating that Plus One generates "tens of thousands of labeled synthetic package images with a variety of poses, placements on the belt, and belt surface" for training its robotic induction systems.

64.    A true and correct copy of Mr. Edwards' presentation slide is attached as Exhibit A, showing Plus One's admitted use of synthetic data generation.

65.    Despite this public admission by its CTO, Plus One filed the instant Complaint denying use of synthetic images, stating at paragraph 34 that "Plus One's products use data derived from real images, not synthetic image scenes."

66.    Plus One repeated these false statements to the media. On or about September 24, 2025, Law360 published an article titled "Robotics AI Co. Says It Didn't Infringe Imaging Patents," which quoted Plus One's false denial of synthetic image use.

67.    These false statements have damaged AIIA's reputation by suggesting AIIA's infringement allegations lack merit, when in fact they are fully supported by substantial evidence and Plus One's own admissions.

## COUNT I — PATENT INFRINGEMENT OF U.S. PATENT NO. 11,257,272

68.    AIIA incorporates paragraphs 57-68 by reference.

69.    AIIA is the owner of all rights in U.S. Patent No. 11,257,272 ("the '272 Patent"), titled "*Systems and Methods for Generating Labeled Image Data for Machine Learning Using a Multi-Stage Image Processing Pipeline*," which was duly and legally issued by the United States Patent and Trademark Office on February 22, 2022.

70.    Plus One has directly infringed and continues to infringe at least Claims 1-20 of the '272 Patent by making, using, selling, and offering for sale its PickOne Vision Software, DepalOne depalletizing system, and InductOne induction system.

71.    Plus One's products practice every element of the asserted claims by:

15

- Receiving databases of background images, 3D models, texture materials, and camera settings;

- Constructing synthetic image scenes using computer graphics engines;

- Placing virtual cameras to capture series of camera views;

- Rendering synthetic images with varying parameters; and

- Using synthetic datasets to train machine learning models for robotic vision tasks

72.    Specifically, regarding Claim 1 of the '272 Patent, Plus One's PickOne AI-powered vision software infringes by:

- Receiving databases: Plus One's systems receive databases of background warehouse images, 3D models of parcels and objects, texture materials like cardboard, and camera setting files, as evidenced by their use of NVIDIA TAO and computer vision tools for pick-and-place operations;

- Constructing synthetic scenes: Using computer graphics engines such as NVIDIA Omniverse or Unity to construct synthetic warehouse scenes with selected backgrounds and textured 3D models in the foreground;

- Virtual camera placement: Placing virtual cameras with specific positions, intrinsics, calibrations, and settings to capture camera views of synthetic scenes;

- Rendering to pixels: Rendering projection coordinates as pixel coordinates of synthetic images; and

- Training dataset creation: Appending synthetic images to training datasets for machine learning systems performing computer vision tasks including object detection and depth estimation

73.     Regarding Claim 2 of the '272 Patent, Plus One infringes by using camera settings files with parameters identical to smartphone cameras to create realistic representations for their robotic vision systems, which often integrate mobile device-like cameras for cost-effective sensing.

74.     Regarding Claim 3 of the '272 Patent, Plus One infringes by specifying virtual camera positions using 3D Cartesian coordinates, image plane locations, and Euler angles for rotations, essential for accurate pose simulation in training models for precise picking in systems like InductOne.

75.     Regarding Claim 4 of the '272 Patent, Plus One infringes by using 3D background images generated by combining image files with depth maps, providing ground truth depth for training ML models in depth estimation for their depalletizing systems.

76.     Regarding Claim 5 of the '272 Patent, Plus One infringes by performing computer vision tasks including object classification, segmentation, and depth generation for robotic picking tasks such as identifying and grasping parcels.

77.     Regarding Claims 6-7 of the '272 Patent, Plus One infringes by augmenting synthetic images with image effects including camera blur, lens distortion, lens flare, polar coordinate distortion, and image noise to enhance model robustness for handling variations in warehouse settings.

78.     Regarding Claim 8 of the '272 Patent, Plus One infringes by indexing synthetic images in training databases using metadata fields including image scene class, scene metadata, image metadata, and camera settings file parameters for efficient dataset management.

79.     Regarding Claims 9-10 of the '272 Patent, Plus One infringes by rendering depth data for synthetic images by associating pixel coordinates with ground truth depth information describing distances between points and virtual cameras, with depth values assigned to backgrounds and 3D models during rendering.

80.     Regarding Claim 11 of the '272 Patent, Plus One infringes by rendering additional image data including image segmentation data, optical flow information, noise data, and occlusion maps alongside synthetic images for training comprehensive vision models.

81.     Regarding Claim 12 of the '272 Patent, Plus One infringes by setting up camera intrinsics, calibration metadata, and capture settings identical to actual camera devices to simulate capture performance of real hardware used in their robots.

82.     Regarding Claims 13-16 of the '272 Patent, Plus One infringes by generating pairs of synthetic stereo images through:

- Constructing image scenes with backgrounds, 3D models, and textures;

- Placing first and second virtual cameras in stereoscopic arrangement;

- Including stereoscopic calibration metadata with rotation matrices, translation vectors, and rectification matrices;

- Setting camera parameters identical to actual stereo camera devices; and

- Including baseline, zoom, focus, and convergence plane depth in camera capture settings.

83.     Regarding Claim 17 of the '272 Patent, Plus One's PickOne AI software specifically infringes this method claim through:

- Receiving step: PickOne receives databases of background warehouse images, 3D box/pallet models, textures (e.g., cardboard materials), scene metadata (e.g., pallet layouts), and camera settings for simulation;

- First construction step: PickOne constructs virtual warehouse scenes (scene class: "depalletizing pallet") using graphics engines like NVIDIA Omniverse or Unity for synthetic images;

- Camera placement step: PickOne places virtual cameras in simulated scenes to capture multiple views (e.g., stereo pairs for depth);

- Rendering step: PickOne renders synthetic images with projection coordinates (e.g., pixel/depth maps) for each view; and

- Second construction step: PickOne constructs second synthetic image scenes with the same scene class, varying parameters like lighting/textures while reusing camera positions for additional datasets through domain randomization.

84.     Regarding Claims 18-20 of the '272 Patent, Plus One further infringes by:

- Claim 18: Augmenting synthetic images with noise and lens distortion for realism using NVIDIA tools;

- Claim 19: Generating depth data and optical flow information from stereo views for 3D vision in picking operations; and

- Claim 20: Training machine learning models with the synthetic data for computer vision tasks in warehouse automation.

85.     Plus One's website describes its products as using "industry-leading AI-powered vision solutions" for computer vision tasks in warehouse automation, including depalletizing (handling boxes, cartons, bags, and food & beverage items) and induction (achieving pick rates of 2,200-3,300 per hour), which necessarily involves the claimed synthetic data generation methods.

20

86.    Although Plus One advertises "no AI training needed" for certain tiers, this refers to end-user training, while Plus One's underlying AI models are pre-trained using synthetic data generation methods that infringe the '272 Patent.

87.    Plus One's infringement is willful, as Plus One had knowledge of the '272 Patent at least as of July 2025 when it received AIIA's demand letter and continued infringing despite notice.

88.    AIIA has suffered damages as a result of Plus One's infringement, including lost profits and licensing opportunities.

## COUNT II — PATENT INFRINGEMENT OF U.S. PATENT NO. 10,075,693

89.    AIIA incorporates paragraphs 57-88 by reference.

90.    AIIA is the owner of all rights in U.S. Patent No. 10,075,693 ("the '693 Patent"), titled "*Embedding Calibration Metadata Into Stereoscopic Video Files*," which was duly and legally issued by the United States Patent and Trademark Office on September 11, 2018.

91.    Plus One has directly infringed and continues to infringe at least Claim 1 of the '693 Patent through its stereoscopic 3D vision systems that embed calibration metadata into video feeds for real-time processing.

92.    Specifically, regarding Claim 1 of the '693 Patent, Plus One's PickOne AI systems infringe by implementing:

- A computerized system for displaying stereoscopic 3D video: PickOne AI uses stereo/3D cameras to capture video for robotic vision, embedding metadata for calibration and display in VR/training interfaces;

- Computer store containing stereoscopic video feed with metadata: PickOne stores stereo video feeds with contemporaneous metadata feeds from depth sensors and accelerometers for real-time processing, including time-sequenced sensor data for depth estimation;

- Computer processor obtaining and processing: PickOne's processor obtains stereo feeds from storage and is programmed to parse the plurality of contemporaneous metadata feeds from the stereoscopic video feed; and

- Calibration using metadata: PickOne calibrates the stereoscopic video feed for display in training/operation interfaces using the parsed calibration metadata for real-time calibration in robotic picking operations.

93.    Plus One's systems capture stereo video with embedded metadata feeds from depth sensors and accelerometers, parsing and using this metadata for calibration during robotic operations in warehouse environments.

94.    The '693 Patent's system for embedding sensor-based calibration and contextual metadata into stereoscopic 3D video files in real time during capture, and using that metadata during playback to calibrate, render, and display the video is directly practiced by Plus One's vision systems for warehouse robotics.

95.     Plus One's infringement is willful, as Plus One had knowledge of the '693 Patent at least as of July 2025 when it received AIIA's demand letter and continued infringing despite notice.

96.     AIIA has suffered damages as a result of Plus One's infringement.

## COUNT III — PATENT INFRINGEMENT OF U.S. PATENT NO. 9,930,315

97.     AIIA incorporates paragraphs 57-96 by reference.

98.     AIIA is the owner of all rights in U.S. Patent No. 9,930,315 ("the '315 Patent"), titled "*Stereoscopic 3D Camera for Virtual Reality Experience*," which was duly and legally issued by the United States Patent and Trademark Office on March 27, 2018.

99.     Plus One has directly infringed and continues to infringe at least Claims 1 and 7 of the '315 Patent through its stereoscopic devices comprising wide-FOV lenses, dual image sensors, and systems for embedding gyroscope, accelerometer, and GPS data in real-time.

100.    Specifically, regarding Claim 1 of the '315 Patent, Plus One's PickOne vision systems infringe each element:

- First and second lenses with >170° FOV and parallel optical axes: PickOne uses stereo cameras with wide FOV (>170°) lenses with parallel axes for 3D depth perception in robotics applications;

- First and second image sensors: PickOne has dual sensors coupled to the lenses configured to capture stereoscopic images for depth perception in warehouse environments;

23

- Bus, processor, memory, and display: PickOne hardware includes bus configurations coupling the image sensors, processor, memory, and display for video processing and display;

- Gyroscope, accelerometer, and GPS: PickOne includes gyroscope, accelerometer, and GPS sensors coupled to the bus for pose estimation in mobile robotics applications; and

- Processor configuration: PickOne's processor processes stereoscopic images into sequences, embeds calibration information and sensor information (from gyroscope, accelerometer, and GPS) in the stereoscopic video sequence in real time for ML/training and VR-like robotic interfaces.

101.   Regarding Claim 7 of the '315 Patent, Plus One infringes by implementing video stabilization operations on both left and right channels of stereoscopic 3D video sequences, supporting real-time recalibration during video capture and playback adjustments.

102.   Plus One's vision systems for warehouse robotics employ these claimed elements for 3D depth perception and navigation in depalletizing and induction tasks.

103.   Plus One's dual-arm systems and vision software capture stereo 3D data for depth-aware picking and handling, as described on its website at plusonerobotics.com.

104.    Plus One's infringement is willful, as Plus One had knowledge of the '315 Patent at least as of July 2025 when it received AIIA's demand letter and continued infringing despite notice.

105.    AIIA has suffered damages as a result of Plus One's infringement.

## COUNT IV — INDUCED INFRINGEMENT

106.    AIIA incorporates paragraphs 57-105 by reference.

107.    Plus One actively induces infringement of the Asserted Patents under 35 U.S.C. § 271(b) by providing detailed instructions, tutorials, and support to customers for using the infringing features.

108.    Plus One's website (www.plusonerobotics.com) and technical documentation teach customers to implement the patented methods, with Plus One having specific intent to encourage infringement. Specifically:

- Plus One provides tutorials teaching users to utilize synthetic data generation methods claimed in the '272 Patent;

- Plus One offers customer support services explicitly teaching infringing image and video enhancement methods; and

- Plus One's documentation demonstrates the software's specialized capabilities that align with the patented processes.

109.    Plus One had knowledge of the Asserted Patents since at least July 2025, when it received AIIA's demand letter, but continued promoting infringing uses.

110.    Plus One's promotional materials describe features of its software that align with the capabilities claimed in the Asserted Patents, coupled with targeted marketing for imaging applications in the United States.

111.    Plus One continues to provide post-sale services, including technical support, software updates, and customer assistance within Texas and New York to customers, including FedEx, MSC Industrial, and DHL, actively encouraging use of the infringing features.

## COUNT V — CONTRIBUTORY INFRINGEMENT

112.    AIIA incorporates paragraphs 57-111 by reference.

113.    Plus One contributes to infringement under 35 U.S.C. § 271(c) by offering software modules that are especially made for practicing the patented methods and have no substantial non-infringing uses.

114.    Specifically, Plus One provides:

- Modules within its PickOne software that implement synthetic data generation as claimed in the '272 Patent;

- Stereoscopic vision components that embed calibration metadata as claimed in the '693 Patent; and

- Wide-FOV stereo camera systems with sensor embedding as claimed in the '315 Patent.

115.    The accused functionalities are material to the patented inventions and Plus One knows they are especially adapted for infringement, as evidenced by:

- Specific product documentation describing features that implement the claimed methods;

- Promotional materials demonstrating the software's specialized capabilities; and

- Technical specifications showing the modules' dedicated purposes for imaging enhancement.

116. These modules are exclusively designed and marketed for the infringing functionalities, with no substantial non-infringing use, as they are integral to the software's image enhancement workflows.

117. Plus One knew that its software was especially made or adapted to facilitate infringement of the Asserted Patents, particularly after receiving AIIA's demand letter in July 2025, yet continued to provide these components to customers.

## COUNT VI — FRAUD ON THE COURT

118. AIIA incorporates paragraphs 57-117 by reference.

119. Plus One has perpetrated a fraud on this Court by knowingly submitting false statements of material fact.

120. Specifically, Plus One's Complaint falsely denies using synthetic images when Plus One's CTO publicly admitted generating "tens of thousands of labeled synthetic package images."

121. This misrepresentation is material to the Court's determination of infringement.

122.   Plus One and its counsel either knew these statements were false or recklessly disregarded their truth, violating Fed. R. Civ. P. 11(b)(3).

123.   Fraud on the court is defined as an unconscionable plan or scheme designed to improperly influence the court in its decision-making. It generally requires the most egregious misconduct, such as bribery of a judge or jury members, or the fabrication of evidence by a party in which an attorney is implicated. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996). Such fraud must be proven by clear and convincing evidence. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

124.   In the scenario here, Plus One's attorney's false statement denying the use of synthetic images for training AI models, despite the client's CTO publicly admitting to such use, meets the criteria for fraud on the court as the false statement was made knowingly and willfully with the intent to deceive the court. Courts have held that knowingly misrepresenting facts to the court with the intent to deceive constitutes a serious breach of professional obligations and fiduciary duties. In *In re Evangeline Refining Co.*, 890 F.2d 1312, 1324 (5th Cir. 1989), fraudulent statements to the court regarding fee arrangements were deemed a flagrant violation of candor and fiduciary obligations, resulting in denial of compensation.

125.   Moreover, under Fed. R. Civ. P. 11(b), attorneys certify that their factual contentions have evidentiary support and that their denials of factual contentions are warranted on the evidence. Violations of Rule 11(b), such as

knowingly making false statements, can lead to sanctions, including monetary penalties or disbarment. In *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 124 F.R.D. 120, 144-45 (W.D.La. 1989), the court highlighted the ethical and professional responsibilities of attorneys to be truthful and forthright with the court, emphasizing that misleading the court undermines the integrity of the judicial process.

126.    The Court should sanction this misconduct by:

- Striking Plus One's pleadings

- Entering default judgment for AIIA

- Awarding attorneys' fees under Rule 11 and 28 U.S.C. § 1927

## COUNT VII — DEFAMATION

127.    AIIA incorporates paragraphs 57-126 by reference.

128.    Plus One published false statements to Law360 and other media outlets claiming it does not use synthetic images and does not infringe AIIA's patents.

129.    These statements are demonstrably false given Plus One's public admissions of synthetic image use.

130.    The statements are defamatory per se under Texas law as they:

- Impugn AIIA's honesty and integrity in its patent enforcement activities;

- Suggest AIIA makes baseless infringement allegations; and

- Injure AIIA in its profession as a patent enforcement entity.

131.    Plus One acted with actual malice, knowing the statements were false or with reckless disregard for their truth.

132.    As a direct result, AIIA has suffered:

- Reputational harm in the intellectual property community;

- Diminished credibility in licensing negotiations;

- Economic damages exceeding $75,000; and

- Mental anguish and damage to its professional standing.

133.    AIIA is entitled to actual damages, exemplary damages, and injunctive relief requiring retraction.

## COUNT VIII — BUSINESS DISPARAGEMENT

134.    AIIA incorporates paragraphs 57-133 by reference.

135.    Plus One's false statements that AIIA is a "non-practicing patent monetization entity" engaged in a "shakedown" constitute business disparagement.

136.    These statements are false, as AIIA is a legitimate trade association enforcing valid patents.

137.    Plus One published these statements with malice toward third parties, including the media and potential licensees.

138.    AIIA has suffered special damages, including lost licensing opportunities.

## COUNT IX — PRELIMINARY AND PERMANENT INJUNCTION

139.    AIIA incorporates paragraphs 57-138 by reference.

140.    AIIA is entitled to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65. Under 35 U.S.C.A. § 283, courts

with jurisdiction over patent cases may grant injunctions "in accordance with the principles of equity" to prevent the violation of patent rights. The statute provides courts with discretion to issue injunctions on terms deemed reasonable, emphasizing the equitable nature of such relief.

141. AIIA satisfies all requirements for preliminary injunctive relief because: (1) AIIA will suffer irreparable harm without an injunction, as Plus One's continued infringement directly competes with AIIA's offerings in the AI imaging market, causing injuries that are difficult to quantify and cannot be remedied through monetary damages alone; (2) remedies available at law, including monetary damages, are inadequate to fully compensate for the long-term competitive injury to AIIA; (3) considering the balance of hardships between the parties, equitable relief is appropriate because Plus One, upon information and belief, could modify or suspend use of the accused technology, whereas AIIA risks sustained loss of its competitive foothold; and (4) the public interest favors enforcement of patent rights and preserving fair competition, particularly where alternative technologies exist in the market.

142. A preliminary injunction is appropriate where the plaintiff demonstrates: (A) A likelihood of success on the merits; (B) A likelihood of irreparable harm in the absence of preliminary relief; (C) That the balance of equities favors the plaintiff; and (D) That an injunction serves the public interest. *See eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006); *Tinnus Enters.,*

*LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926-30 (Fed. Cir. 2012).

143.    The four-factor test for preliminary injunctions in patent cases is well-established. As set forth in *Wireless Agents, L.L.C. v. Sony Ericsson Mobile Communications AB,* 390 F.Supp.2d 532, 535 (N.D. Tex. 2005), courts consider: (1) Likelihood of Success on the Merits: The plaintiff must demonstrate a reasonable likelihood of prevailing on the merits of the patent infringement claim, including showing that the patent is valid and enforceable and that the defendant's actions likely infringe upon the patent; (2) Irreparable Harm: The plaintiff must show that it will suffer irreparable harm if the injunction is not granted—harm that cannot be adequately remedied by monetary damages or other legal remedies; (3) Balance of Hardships: The court evaluates whether the balance of hardships tips in favor of the plaintiff by comparing the harm the plaintiff would suffer without the injunction to the harm the defendant would experience if the injunction is granted; and (4) Public Interest: The court considers whether granting the injunction would serve the public interest, often assessing whether the injunction would promote innovation and protect patent rights without unduly harming competition or other public concerns.

144.    Likelihood of Success on the Merits. Plus One's software products directly infringe the Asserted Patents by implementing the claimed methods, as demonstrated by Plus One's CTO's public admission that Plus One generates "tens of thousands of labeled synthetic package images" using the methods claimed in the

'272 Patent. Plus One also indirectly infringes through inducement and contributory infringement, as evidenced by its promotional materials and customer support. The Asserted Patents are presumed valid under 35 U.S.C. § 282, and no substantial question of invalidity has been raised.

145.   Irreparable Harm. AIIA faces concrete and irreparable harm from Plus One's continued use of the patented technologies, including:

- Lost licensing opportunities with major customers including FedEx, MSC Industrial, and DHL, who have operations in Texas;

- Erosion of market share in the AI-powered robotic vision sector;

- Diminished reputation in the AI imaging market;

- Loss of competitive advantage from Plus One's unauthorized use of AIIA's innovations; and

- Price erosion caused by Plus One's competing infringing products.

146.   The relationship-driven nature of this market means these losses cannot be adequately quantified or remedied through monetary damages alone. Once customers implement Plus One's infringing systems, high switching costs and multi-year integration commitments make recovering these relationships extremely difficult. As emphasized in *Bright Data Ltd. v. Teso LT, UAB*, 584 F.Supp.3d 193, 196 (E.D. Tex. 2022), courts recognize the need for patentees to demonstrate

irreparable injury and the inadequacy of monetary damages, alongside the balance of hardships and public interest considerations.

147.    The balance of hardships strongly favors AIIA. While Plus One would only need to temporarily suspend specific infringing features or implement available non-infringing alternatives, AIIA continues to suffer permanent and irreversible damage to its core market position and licensing model. Plus One has the resources and technical capabilities to pursue non-infringing alternatives, as evidenced by its claims that certain product tiers require "no AI training," suggesting modular architecture that could accommodate non-infringing implementations.

148.    The public interest strongly favors injunctive relief because protecting valid patents in the AI imaging sector encourages innovation and ensures continued investment in technologies that benefit consumers. The requested injunction would not disrupt customer access, as alternative non-infringing products remain available in the market. Enforcement of patent rights promotes the Constitutional purpose of the patent system to "promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8.

149.    AIIA has invested heavily in researching, developing, and patenting its technologies, which represent the foundation of its competitive position and commercial offerings in the imaging market. Plus One's unauthorized use of the patented methods threatens to erode AIIA's market share, reduce licensing opportunities, and diminish the value of its intellectual property.

150.    Plus One's unauthorized use of AIIA's patented technologies has directly caused quantifiable harm to AIIA, including documented erosion of market position, systematic pricing pressure, and significant loss of competitive advantage in the imaging sector. On information and belief, some customers have chosen Plus One's offerings due in part to its infringing features. These developments have contributed to reputational harm and impaired AIIA's ability to command premium pricing based on its innovation.

151.    Plus One's infringement is willful and egregious. On information and belief, Plus One had pre-suit knowledge of the Asserted Patents based on its participation in imaging technology forums and review of competitor offerings. Despite a formal notice in July 2025, Plus One continued marketing and deploying features that align with the patented technologies, without seeking a license or altering its software. Its post-notice conduct—including the continued promotion and use of the accused features and false public denials—demonstrates deliberate disregard for AIIA's patent rights.

152.    Procedural requirements also support preliminary relief. As noted in *Fenner Investments, Ltd. v. Juniper Networks Inc.*, 236 F.R.D. 309, 310 (E.D. Tex. 2006), preliminary infringement contentions (PICs) are required to provide notice of the accusing party's specific theories of infringement, which can impact the court's assessment of the likelihood of success on the merits. AIIA has provided detailed infringement contentions demonstrating Plus One's infringement of each asserted claim.

153.    AIIA has sustained significant and irreparable economic harm from Plus One's infringing activities that cannot be adequately compensated by monetary damages alone. Based on AIIA's internal licensing efforts and understanding of procurement outcomes, customers with operations in Texas have selected Plus One's competing products. Upon information and belief, procurement decision-makers cited the infringing features as key selection factors. These lost opportunities represent not just monetary losses, but lasting harm to AIIA's competitive position, client relationships, and role in shaping innovation standards within the imaging field.

154.    The harm to AIIA extends beyond just lost sales to include price erosion, reputational damage, and lost market momentum in a rapidly evolving field. The specialized nature of AI-powered vision implementations means customer relationships, once lost, are extremely difficult to recover due to high switching costs and multi-year integration commitments.

155.    Pursuant to Fed. R. Civ. P. 65(d), AIIA respectfully requests that the Court enter a preliminary injunction enjoining Plus One, its officers, agents, servants, employees, and all persons in active concert or participation with them, from engaging in the following acts during the pendency of this action:

> •    Manufacturing, marketing, distributing, selling, or licensing the accused software products (including PickOne Vision Software, DepalOne, and InductOne systems), or any product not more

than colorably different from them, that incorporates the infringing features;

· Encouraging, instructing, or enabling customers to use the accused software in a manner that practices the patented methods;

· Publishing documentation or promotional materials that depict or endorse the use of the accused features; and

· Making, using, selling, or offering to sell products that infringe the Asserted Patents through the use of synthetic image generation for training machine learning models or embedding calibration metadata into stereoscopic video files.

156.  AIIA further seeks permanent injunctive relief following trial on the merits, permanently enjoining Plus One from all infringing activities and requiring the recall or modification of all infringing products currently in the marketplace.

## PRAYER FOR RELIEF

WHEREFORE, AIIA respectfully requests that this Court:

**On Plus One's Complaint:**

a.  Dismiss Plus One's Complaint with prejudice;

b.  Declare that Plus One infringes all asserted claims of the Patents-in-Suit;

c.  Enter judgment that Plus One is not entitled to any declaratory relief;

**On AIIA's Counterclaims:**

    d.    Enter judgment that Plus One has infringed and continues to infringe U.S. Patent Nos. 11,257,272; 10,075,693; and 9,930,315;

    e.    Award AIIA damages for Plus One's infringement, including lost profits and reasonable royalties under 35 U.S.C. § 284;

    f.     Treble damages for willful infringement under 35 U.S.C. § 284;

    g.    Enter temporary, preliminary, and permanent injunctions pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65, enjoining Plus One, its officers, agents, employees, and all persons acting in concert with them, from continued infringement of the Asserted Patents through the manufacture, marketing, distribution, or support of the accused software or any product not more than colorably different;

    h.    Find fraud on the court and impose appropriate sanctions including:

        · Striking Plus One's pleadings;

        · Default judgment for AIIA; and

        · Monetary sanctions against Plus One.

    i.    Award actual and exemplary damages for defamation and business disparagement;

    j.    Order Plus One to publish retractions of all false statements;

k.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon AIIA's request, the applicable governing Internet marketplace website operators and/or administrators for any Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, associated ecommerce stores and websites, and any other alias seller identification names being used and/or controlled by Plus One to engage in the business of marketing, offering to sell, and/or selling goods bearing infringements of AIIA's patents;

l.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), and the Court's inherent authority, that upon AIIA's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any name, address and e-mail address known to be associated with Plus One's Seller IDs;

m.      Entry of an order that, upon AIIA's request, Plus One and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and its related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with

the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Plus One presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to AIIA in partial satisfaction of the monetary judgment entered herein;

n.     Declare this case exceptional under 35 U.S.C. § 285 and award attorneys' fees;

o.     Award costs, expenses, and pre- and post-judgment interest;

p.     Grant all other just and proper relief.

### JURY DEMAND

AIIA demands trial by jury on all issues so triable.

Respectfully submitted,

GOLDEN LAW, P.C.
Independence Plaza II, Suite 250
14350 Northbrook Drive
San Antonio, TX  78232
(210) 495-0900
(210) 495-0997 (fax)
golden@goldenlaw.net

*/s/ Robert E. Golden*

By: _____

Robert E. Golden
Texas Bar No. 08085560

ATTORNEY FOR DEFENDANTS

40

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been sent by first class mail, facsimile transmission, and/or electronic transmission to Ryan Tyz, TYZ LAW GROUP, PC, 1 Embarcadero Center, Suite 1200, San Francisco, CA 94111 on the 15th day of October, 2025.

*/s/ Robert E. Golden*

_____

Robert E. Golden