IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| PLUS ONE ROBOTICS, INC., <br><br>    Plaintiff / Counter-Defendant, <br><br> v. <br><br> ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC., and ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC., <br><br>    Defendants / Counter-Plaintiffs. | Case No. 5:25-CV-01197-OLG-HJB |

OPPOSITION TO PLUS ONE'S MOTION TO STRIKE AIIA'S AMENDED
PRELIMINARY INFRINGEMENT CONTENTIONS

INTRODUCTION

Plus One asks the Court to impose the harshest available sanction—striking AIIA's entire infringement case—over a contentions dispute that AIIA has already resolved. AIIA's operative Amended Preliminary Infringement Contentions chart every asserted claim of all three Patents-in-Suit, element by element, and map each limitation to identified evidence. And not just any evidence: AIIA's charts rely on Plus One's *own* admissions and materials—its Chief Technology Officer's public statements about its use of Amazon SageMaker Ground Truth, its own published patent application, and its own public source-code repositories. That is precisely the notice the Court's Orders require.

Plus One's motion rests on three assertions, each incorrect. **First**, Plus One says AIIA improperly "lumped" seven products into one chart per patent. But AIIA charted a single product family that Plus One itself markets as sharing one vision system, one sensor family, and one vision computer; where products work the same

1

way as to every charted element, representative charting provides full notice, and Plus One identifies no material difference among them. **Second**, Plus One says AIIA had to cite Plus One's source code. But the Order lists source code as one disjunctive example among several kinds of evidence "or other evidence" that, "according to AIIA," show each element; Plus One never *produced* source code (it offered only an on-site inspection the parties never scheduled); and AIIA's charts prove the accused functionality out of Plus One's own public materials in any event. **Third**, Plus One says AIIA's priority dates are placeholders. But AIIA identified a specific earliest date for each asserted claim—the Order requires nothing more.

Even if any imperfection remained, striking would be improper. The Fifth Circuit weighs four factors before a party is stripped of its claims for a scheduling dispute, and each favors AIIA: AIIA has diligently served and amended its contentions on the agreed dates; any residual prejudice is minimal and fully curable at this preliminary stage, with fact discovery open until November 19, 2027; the ordinary remedy for an imperfect contention is leave to amend, not forfeiture; and the importance of AIIA's counterclaims counsels against the death penalty. Tellingly, the only real time pressure in this case is one Plus One manufactured—by refusing AIIA's offer to extend the claim-construction schedule. The motion should be denied.

## BACKGROUND

AIIA sent Plus One a demand identifying the Patents-in-Suit on July 18, 2025. Plus One filed this declaratory-judgment action, and AIIA counterclaimed for

2

infringement of the '272, '693, and '315 patents. The Scheduling Order set AIIA's preliminary infringement contentions and, for any element AIIA asserts is practiced in software, provided that AIIA "need not serve the aforesaid disclosures for such element until 30 days after source code for the accused product is produced." (Dkt. 25 at 1–2.)

On January 16, 2026, Plus One sent a letter stating that its technical documents (PLUSONE_000001–793) and its source code "were available for inspection" by appointment at its counsel's San Francisco offices. Plus One never produced source code, and the parties never coordinated an inspection. (See Dkt. 40-11 at 4–5.) AIIA served contentions on February 9, 2026; the Court then entered its Order Regarding Contentions (Dkt. 31) and, at the parties' request, extended AIIA's deadline. On May 20, 2026, AIIA served a supplemental production that cured the majority of the deficiencies Plus One had raised. (Dkt. 40-11 at 3.)

AIIA served amended contentions on the agreed date that removed AIIA's software-element reservations and mapped those elements to publicly available materials, including Plus One's own code repositories, and—after Plus One's July 16, 2026 letter—served further amendments that (i) chart every asserted '315 claim element by element, and (ii) add a detailed description of the accused product family. On July 22, 2026, AIIA responded in writing, explaining in detail why its contentions comply with the Court's Orders. (Dkt. 40-11 (the "July 22 Letter").) When the parties extended AIIA's contentions deadline, AIIA had offered—well in advance—a corresponding two-month extension of the claim-construction deadline

3

and the remaining case deadlines, and AIIA has remained willing to extend and offered again twice after that, including in its motion to continue (Dkt. 44). Plus One refused that offer on the eve of the extension request. (Dkt. 40-11 at 6; Golden Decl. ¶¶ 3–4.)

Most recently, on July 29, 2026, Plus One filed a separate administrative motion asking the Court to unseal AIIA's contentions and to compel AIIA to re-serve them stripped of their "Highly Confidential—Attorneys' Eyes Only" designation within two days. (Dkt. 43.) AIIA brings that motion to the Court's attention because Plus One's conduct in filing it disregards the very Protective Order Plus One otherwise invokes. The parties' stipulated Protective Order (Dkt. 27-1) supplies the mechanism for challenging a confidentiality designation—notice, a meet-and-confer, and, if the dispute persists, a motion on which the *designating* party is heard and bears the burden—and it requires that the material be treated as designated until the Court rules. (Dkt. 27-1 ¶ 18 (on such a challenge, "the burden shall be on the designating Party to show why its classification is proper," and "[p]ending the Court's determination of the application, the designation of the designating Party shall be maintained").) Plus One followed none of that. It unilaterally declared AIIA's designation improper, treated AIIA's Attorneys'-Eyes-Only contentions as non-confidential, and asked the Court to strip the designation and compel re-service on two days' notice—in breach of the Protective Order's agreed procedure. That is particularly striking because Plus One insists on the same Order when its own information is at stake: Plus One designated its entire document production "Highly

4

Confidential—Attorneys' Eyes Only" under the Protective Order, and it has withheld its source code to inspection-only under the Protective Order. (Dkt. 40-3.) Plus One thus enforces the Protective Order for its own benefit while refusing to honor it for AIIA's designated material. AIIA's designation is, moreover, well founded: it protects AIIA's confidential, element-by-element analysis of how Plus One in particular infringes—work product specific to Plus One's products, not the public claim language or Plus One's own materials—and AIIA has already told Plus One it has no objection to Plus One sharing the contentions with its client, resolving the only concrete concern Plus One raised. AIIA raises this so the Court is aware of the double standard and so that Plus One is required to route any designation dispute through the Protective Order going forward rather than by unilateral, short-fuse motion. In all events, the designation dispute has no bearing on the only question the Motion to Strike presents: whether AIIA's contentions comply with the Court's Orders. They do.

## LEGAL STANDARD

Preliminary infringement contentions exist to provide notice, not proof. They "merely notif[y] a defendant of the asserted theories of infringement," while "'[c]onfirming' theories of infringement is a task left to discovery." *Realtime Data v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 WL 2590101, at \*5 (E.D. Tex. Aug. 18, 2009). Contentions must set forth theories "with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the [claims]." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex.

2005). The rule "is essentially a discovery shortcut" that does "not require the disclosure of specific evidence nor . . . require a plaintiff to prove its infringement case"; it demands only specificity "sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, 706 F. Supp. 3d 936, 943–44 (N.D. Cal. 2023).

Striking contentions is a severe sanction reserved for genuine defiance of a court order. Before imposing it, the Fifth Circuit weighs four factors: (1) the explanation for the noncompliance; (2) the importance of the matter; (3) prejudice; and (4) whether a continuance or amendment would cure any prejudice. *Geiserman v. MacDonald*, 893 F.2d 787, 790–92 (5th Cir. 1990); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380–81 (5th Cir. 1996); accord *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535–36 (5th Cir. 2003) (applying the same factors to modification of a scheduling order for good cause). Because contentions are, by design, amended as discovery proceeds, the ordinary course for an imperfect contention is leave to amend—not forfeiture of the claim. *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-cv-559, 2009 WL 81874, at *5 (E.D. Tex. Jan. 12, 2009) (striking contentions that would force dismissal is "unnecessarily harsh"; ordering amendment to comply with the local patent rules); *ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971179, at *4 (N.D. Tex. Mar. 29, 2018) (declining to strike without an opportunity to amend); *Linex Techs., Inc. v.*

6

*Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 714 (E.D. Tex. 2008) (denying motion to strike and instead compelling compliant contentions).

ARGUMENT

### I.   AIIA's Amended Contentions Comply With the Court's Orders.

### A.   *Representative charting of a single product family that operates the same way is proper.*

The Court ordered "product-specific" charts. AIIA satisfied that requirement by charting a single product *family* that Plus One itself markets as one system. Section VI of AIIA's contentions establishes, from Plus One's own public materials, that PickOne (including its Lite, Core, and Pro tiers), DepalOne, and InductOne each run the same PickOne AI vision software, use the same family of stereoscopic depth cameras (e.g., Intel RealSense D415, D455, and L515, Orbbec, and Zivid), and process image data on the same OnLogic Karbon 804 vision computer. Plus One's own product page states that "InductOne, powered by PickOne AI vision software," and its literature states that DepalOne "layers on PickOne™ vision software." (Dkt. 40-11 at 3–4; see Third Am. Contentions § VI.) Plus One has identified no material difference among the accused products as to any charted claim element.

To the extent discovery shows that a particular accused product incorporates a specific sensor within the charted family—or a variation of it—the precise sensor used in each product is information within Plus One's possession, is readily discoverable, and does not bear on the charted claim elements, which operate the same way across the family. AIIA has expressly reserved, and here reiterates, its

7

right to supplement its contentions to identify the specific sensor used in each accused product once that information is discovered. Its absence at this preliminary stage—when Plus One has produced no product-specific technical detail—is not a charting deficiency.

Where accused products share the same sensor, the same computing device, and the same charted functionality, a patentee need not reproduce materially identical charts product-by-product; representative charting provides full notice. At the preliminary stage a plaintiff "need only illustrate that the additional uncharted products are 'reasonably similar' to those specifically charted." *IGT v. Zynga Inc.*, No. W-21-CV-00331-ADA, 2022 WL 606719, at *3–4 (W.D. Tex. Mar. 1, 2022); *Stambler v. Amazon.com, Inc.*, No. 2:09-CV-310, 2011 WL 13196261, at *3 (E.D. Tex. May 13, 2011) (applying the "reasonably similar" standard); accord *Juxtacomm Techs., Inc. v. Ascential Software Corp.*, 548 F. Supp. 2d 379, 380–81 (E.D. Tex. 2008) (a single chart may accuse multiple products where separate charts would be identical). The burden to show a material difference rests with Plus One, and it has offered none; a court rejects a defendant's "unilateral argument that products are not fairly represented" where the asserted difference lacks "evidentiary support (e.g., a declaration or technical document)." *IGT*, 2022 WL 606719, at *4. And a defendant that groups its own products together cannot then fault the patentee for treating them alike. *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 747 (D. Del. 2010). Plus One's contrary demand—that AIIA serve a separate, materially identical chart for each accused product—would require, in AIIA's estimation, well

over 1,000 pages of duplicative charting that would be unwieldy for the parties and the Court while adding nothing to the notice AIIA's charts already provide. The Orders require adequate notice, not page count.

II. *AIIA disclosed where each element is found, tied to identified evidence—and the Order did not require source-code citations.*

AIIA's Exhibit A is a genuine element-by-element chart: the left column recites each limitation of each asserted claim verbatim, and the right column maps that limitation to the specific accused functionality with supporting citations. It charts every asserted claim of all three patents—including the '315 claims (2, 7, 8, 9, 15, 16, and 17) that an earlier iteration had not fully charted. (Dkt. 40-11 at 3.) Plus One's complaint is therefore not that AIIA failed to identify elements; it is that AIIA cited the wrong *kind* of evidence. That complaint misreads the Order and the record.

**The Order's evidence list is disjunctive.** The Order requires "citations to all available documents (including technical specifications, diagrams, source code, AI/LLM training materials, *or other evidence*) that, *according to AIIA*, show where a given claim element is found." (Dkt. 31 § I.(b).) Source code and training materials are two examples in an illustrative, disjunctive list—not two mandatory categories. Plus One's reading rewrites the Order into a source-code-citation mandate it does not contain. (Dkt. 40-11 at 4.)

**Publicly available materials suffice—and reverse engineering was neither required nor needed here.** Software cases are unique precisely because, before discovery, a plaintiff "usually only ha[s] access to the manifestation of the

9

defendants' allegedly infringing source code and not the code itself." *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). Courts in this Circuit have held that whether a patentee undertook "reverse engineering or its equivalent" "is not synonymous with whether it has complied with" the patent local rule, which "requires only . . . specific theories of infringement." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (quoting *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079, 2003 WL 21699799, at *4–5 (N.D. Cal. Mar. 21, 2003)). A patentee therefore may "utilize publicly-available materials"—the defendant's own website, public statements, patent applications, and third-party publications—to disclose its theory, without reverse engineering, where those sources show how the accused product operates. *See John Keeler & Co. v. Heron Point Seafood, Inc.*, No. 1:14-CV-1652, 2016 WL 6839615, at *6–7 (N.D. Ohio July 8, 2016) (contentions may rest on public materials, provided each element is tied to the accused product); *Bell Semiconductor, LLC v. NXP USA, Inc.*, 653 F. Supp. 3d 767, 780 (S.D. Cal. 2023) ("reverse engineering or review of non-public information is not necessary to put Defendant on notice of the infringement allegations").

**The publicly available SageMaker materials, standing alone, show where each '272 element is found.** AIIA does not need Plus One's source code to disclose the '272 synthetic-image-generation elements, because the publicly available Amazon SageMaker Ground Truth materials—which Plus One's CTO admits Plus One *uses*—themselves show each element being practiced. The '272 claims recite

"[a] method for generating . . . synthetic image data by capturing a camera view of a synthetic image scene," including "receiving, by a processor, a database of background images" and "an object database including 3D models." The public SageMaker materials show exactly that workflow: the service composes a synthetic scene from background inputs (e.g., the conveyor belt and surrounding work cell—the background) together with a database of 3D object models (the parcels, boxes, and mailers Plus One picks—the foreground objects), then captures a camera view of that scene from a sensor "placed in the virtual world" and automatically labels the result. Because those public materials map onto each recited limitation—the background-image database, the 3D-object database, and the synthetic-scene capture—they are sufficient, standing alone, to disclose where each '272 element is found. Source code would go to proof, not notice; it is unnecessary to disclose this theory, and AIIA was entitled to rely on the public materials that establish it. To the extent discovery identifies additional SageMaker models, model versions, or variations Plus One uses to generate the synthetic image data, AIIA has reserved—and here reiterates—its right to supplement when that information is discovered.

**AIIA's charts otherwise rely on Plus One's own materials, element-appropriately.** For the '272 elements, the chart also cites Plus One's own presentation at Amazon re:MARS 2022 (Session ROB225), in which Plus One's Chief Technology Officer, Shaun Edwards, states: "We use Amazon SageMaker Ground Truth to generate tens of thousands of labeled photorealistic images of packages . . . [that] is used in real-life induction applications to facilitate over 1

11

million picks per day for our customers," (Dkt. 40-11 at 2–3), and Plus One's own patent application, U.S. Pub. No. 2021/0201077 A1 (Lwowski & Majumdar), for the same synthetic-data pipeline. For the '693 and '315 software elements—which do not turn on any executive statement—AIIA relies on Plus One's own publicly available source code: the plusone-robotics/librealsense and plusone-robotics/image_pipeline repositories, published under Plus One's own "plusone-robotics" GitHub organization and identified in the contentions as the "Plus One Robotics fork," with pinpoint citations to specific files. (Dkt. 40-11 at 5.) The '315 "combining . . . [into a] stereoscopic video sequence" limitation Plus One calls unsupported (Dkt. 40 at 6) is charted to Plus One's own stereo-processing code in plusone-robotics/image_pipeline. These are Plus One's own published materials— not the "generic" library Plus One's motion describes.

**Plus One never produced the source code it faults AIIA for not citing.** Plus One's January 16, 2026 letter offered its code for on-site inspection, by appointment, subject to the Protective Order; the parties never coordinated any inspection. An offer of inspection is not a production, and it creates no documents AIIA was obligated to cite. AIIA's counsel reviewed the set Plus One did make available, and it contains no source code or AI/ML training materials. (Dkt. 40-11 at 4–5.) A patentee that charts software limitations from other evidence "ha[s] no obligation" to cite source code "simply because it identified claim elements as 'software limitations' or because it believed at the time that further evidence for those limitations would exist in . . . source code." *Elbit Sys. Land & C4I Ltd. v. Hughes*

12

*Network Sys., LLC*, No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618, at *18–19 (E.D. Tex. June 20, 2017).

**The Scheduling Order's software provision runs in AIIA's favor.** The Order provides that AIIA "need not serve the aforesaid disclosures" for software elements "until 30 days after source code for the accused product is produced." (Dkt. 25 at 1–2.) That deferral—triggered by a production that never occurred—operates for the patent owner's benefit; it is not an obligation AIIA breached. And AIIA's operative contentions make *no* software reservation; they map every element to publicly available materials. Plus One cannot convert a provision that affords AIIA additional time into a basis to strike. At bottom, Plus One demands that AIIA prove its infringement case through Plus One's software roughly a year and a half before fact discovery closes. That is not what preliminary contentions require.

### C.  *AIIA disclosed a specific priority date for each asserted claim.*

AIIA identified a specific earliest priority date for each asserted claim, satisfying the Order (Dkt. 31 § I.(c)): April 25, 2019 for the '272 patent, and April 29, 2015 for the '693 and '315 patents. (Third Am. Contentions § I.A.3; Dkt. 40-11 at 7.) "At least as early as" a named date fixes a date certain while preserving AIIA's right to prove an earlier date of invention; it is not an open-ended placeholder. Courts in this Circuit read the priority-date requirement as a limited notice requirement satisfied by exactly that kind of dated disclosure. See *Green Revolution Cooling, Inc. v. Riot Platforms, Inc.*, No. 6:24-CV-152-RP, 2025 WL 1674487, at *14 (W.D. Tex. Jan. 23, 2025) (declining to compel further disclosure where the patentee

13

stated a priority date "at least as early as" the earliest provisional and reserved the right to prove earlier conception, while noting the defendant could challenge any attempt to predate later); *Seven Networks, LLC v. Motorola Mobility LLC*, No. 3:21-CV-01036-N, 2022 WL 3448642, at *2 (N.D. Tex. Aug. 16, 2022) (contentions "need only contain the claimed priority date"); *EMG Tech., LLC v. Chrysler Grp., LLC*, No. 6:12-CV-259, 2013 WL 12147662, at *2 (E.D. Tex. July 3, 2013) (patentee complied by stating a priority date, and could separately produce earlier conception evidence). To the extent Plus One relies on decisions addressing open-ended priority language, those decisions are out-of-circuit and factually inapposite. *Harvatek Corp. v. Cree, Inc.*, No. C 14-05353 WHA, 2015 WL 4396379, at *3 (N.D. Cal. July 17, 2015), and *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015), struck open-ended phrasing where the patentee coupled it with untimely or shifting attempts to move the invention date and failed to answer the objection—not where, as here, the patentee fixed a single earliest date certain for each claim. And *Oil-Dri Corp. of America v. Nestlé Purina Petcare Co.*, No. 16 C 9179, 2017 WL 1862646, at *3 (N.D. Ill. May 9, 2017), *declined to strike* even the phrasing it disfavored, ordering amendment instead as the proportionate remedy. AIIA did not hedge with a range; it disclosed a single earliest date for each asserted claim and mapped every element across more than 200 pages of contentions. Nothing in these decisions supports striking on that record.

## III.    Even If Any Deficiency Remained, the Four-Factor Test Forecloses Striking.

**Explanation and diligence.** AIIA served its contentions on the agreed dates, cured the majority of Plus One's asserted deficiencies through its May 20, 2026 supplemental production, and amended promptly and repeatedly to address Plus One's letters—charting all '315 claims, removing its software reservations, and mapping elements to public evidence. That is diligence, not defiance.

**Prejudice.** Any residual prejudice is minimal and self-inflicted. The case is at the preliminary-contention stage, with fact discovery open until November 19, 2027, and AIIA has expressly reserved the right to amend as discovery proceeds. (Dkt. 31.) Whatever schedule pressure Plus One perceives around the August 10 claim-term exchange is the direct product of Plus One's refusal of AIIA's offer to extend that very deadline—an offer AIIA made well in advance and remains willing to honor. (Dkt. 40-11 at 6.) A movant cannot manufacture prejudice by rejecting the cure and then invoke it. See *In re AT&T Inc. Customer Data Sec. Breach Litig.*, No. 3:24-CV-00757-E, 2025 WL 3125918 (N.D. Tex. Sept. 23, 2025) (a party "cannot create an emergency through its own delay"); *In re Villareal*, 160 B.R. 786 (Bankr. W.D. Tex. 1993) ("[c]ause is not shown when the cause . . . is one of the movant's own making").

**Curability.** The ordinary remedy for an imperfect contention is leave to amend, and AIIA has repeatedly shown both the willingness and the ability to amend. Courts in this Circuit routinely decline to strike where any prejudice can be cured, particularly early in a case. *ZitoVault*, 2018 WL 2971179, at *3–4; *CyWee Grp. Ltd. v. Samsung Elecs. Co.*, No. 2:17-CV-00140-RWS-RSP, 2018 WL 574871, at

15

*2–3 (E.D. Tex. Jan. 26, 2018). This case is far from the late-stage, uncurable posture in which striking has been imposed. Cf. *Swarm Tech. LLC v. Hewlett Packard Enter. Co.*, No. H-24-4927, 2025 WL 2960162, at *2 (S.D. Tex. Oct. 17, 2025) (striking where a late amendment added fifteen new claims not in the preliminary contentions, requiring a restart of claim-construction work). If the Court identifies any specific shortcoming, the proportionate course is targeted supplementation—not the case-ending sanction Plus One seeks.

**Importance.** The contentions define AIIA's counterclaims. Striking them would be effectively dispositive of AIIA's infringement case. The importance of the matter therefore weighs *against* forfeiture and in favor of resolving the dispute on a full record, particularly where lesser measures fully protect Plus One.

## IV.    Plus One's Authorities Are Inapposite.

The cases Plus One cites involved patentees who failed to identify the asserted claim elements at all, or who tied claims to public literature without any link to a real-world product. AIIA's contentions do the opposite: they identify and chart every asserted element, and they tie each element to Plus One's own products, admissions, patent application, and published code. Those cases turned on contentions that showed far less than AIIA's here: AIIA's amended contentions run more than 200 pages and map every limitation of every asserted claim, element by element, to identified evidence. Whatever shortcomings the contentions in Plus One's authorities suffered, they bear no resemblance to the detailed, element-by-

16

element mapping AIIA has served. On this record, Plus One's authorities support denial, not striking.

## CONCLUSION

AIIA respectfully requests that the Court deny Plus One's Motion to Strike. Because the motion turns on the legal sufficiency of AIIA's contentions—a question fully joined by the parties' briefing and apparent on the face of the contentions—it does not require an evidentiary hearing and can be decided on the papers. If the Court concludes that any element requires further specificity, AIIA requests leave to supplement rather than an order striking its contentions, and reiterates its standing offer to extend the claim-construction schedule so the parties can proceed in an orderly way. To ensure the Protective Order is applied even-handedly, AIIA further requests that any confidentiality designation Plus One makes going forward be subject to the same two-business-day administrative review window Plus One asks the Court to impose on AIIA's designations.

Dated: August 5, 2026

Respectfully submitted,

*/s/ Robert E. Golden*
Robert E. Golden
GOLDEN LAW, P.C.
Independence Plaza II, Suite 250
14350 Northbrook Drive
San Antonio, Texas 78232
Telephone: (210) 495-0900
Facsimile: (210) 495-0997
golden@goldenlaw.net

*Attorney for Defendants/Counter-Plaintiffs*

17

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: August 5, 2026

/s/ Robert E. Golden
Robert E. Golden