**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| PLUS ONE ROBOTICS, INC.,<br>Plaintiff / Counter-Defendant,<br>v.<br>ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC., and ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC.,<br>Defendants / Counter-Plaintiffs. | Case No. 5:25-CV-01197-OLG-HJB |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION TO ENFORCE THE PROTECTIVE ORDER AND DISQUALIFY PLAINTIFF'S EXPERT (DKT. 79)**

Defendants and Counter-Plaintiffs Artificial Intelligence Industry Association, Inc. and Artificial Intelligence Imaging Association, Inc. (together, "AIIA") submit this reply in support of their Emergency Motion to Enforce the Protective Order and Disqualify Plaintiff's Expert (Dkt. 79) ("Motion"), and in response to the Omnibus Response (Dkt. 90) of Plaintiff/Counter-Defendant Plus One Robotics, Inc. ("Plus One"). Record citations are to the Declaration of Vivek Ramachandran (Dkt. 81) ("Decl."), the September 10, 2026 hearing transcript (Dkt. 73) ("Tr."), and the exhibits to Dkts. 90, 92, and 94.

## I. Plus One does not dispute the facts of the October 14 disclosure.

Plus One does not deny any fact on which the Motion rests. It gave AIIA's sealed, Attorneys' Eyes Only Fourth Amended Preliminary Infringement Contentions to Prof. Bretl on October 14, 2026; it did so one minute after AIIA objected ("We need the 10 days to vet your expert for conflicts."); no Appendix A Undertaking had been served; and the Undertaking was first

served two days later, at 6:38 p.m. on October 16. (Decl. ¶¶ 12, 14, 15, 23.) Plus One confirms the sequence itself: it "specifically identified Prof. Bretl to AIIA by name and CV, gave notice, and then shared the contentions," and served the Undertaking afterward. (Dkt. 90 at 11.) Paragraph 5(e) permits access to an expert only after the Undertaking and CV are served "at least ten (10) days before access," and it provides that "[n]o disclosure shall occur until all such objections are resolved by agreement or Court order." (Dkt. 27-1 ¶ 5(e).) Measured from the October 16 service, the earliest permissible access was October 26; AIIA's objection remains unresolved; and Plus One has still not identified what it gave Prof. Bretl, certified destruction or non-use, or stopped. (Decl. ¶ 34; Dkt. 94-1 at 3.) Plus One calls this receiving the contentions "a few days too soon." (Dkt. 90 at 11.) It was access with no Undertaking at all, over a written objection. The day after, Plus One invoked the same Paragraph 5(e) to bar AIIA's expert from Plus One's designated material until AIIA served a CV and Undertaking. (Decl. ¶ 16.) Both experts' Undertakings were served on October 16; the only difference is that Plus One's expert has had AIIA's theories since October 14, and AIIA's expert has had nothing. (Decl. ¶¶ 12, 16, 23.)

## II. The September 10 sharing ruling covered Amazon, Intel, and RealSense, not a retained expert.

Plus One's defense is that "[t]he Sharing Order, not the Protective Order, has governed AIIA's contentions since the September hearing." (Dkt. 90 at 11.) The record shows what the ruling addressed. Plus One asked to "share them with third parties who are implicated by the contentions, right. So Intel, RealSense, Amazon, their products are accused." (Tr. 15:11–14.) The Court asked whether it was "okay for them to talk to Amazon or talk to Google or people like that with this," and AIIA agreed as to "only those particular specific parties." (Tr. 16:11–12, 16:19–20.) The ruling permitted sharing "with the appropriate third parties" on notice (Tr. 82:24–83:1), and the written order limits it to "specific third parties where doing so is necessary to prepare their defense to

Defendants' infringement contentions." (Dkt. 71 ¶ 3.) Nothing in the colloquy, the ruling, or Dkt. 71 mentions experts or the Protective Order, and the Court told the parties to "seek clarification" if there was "any question about it." (Tr. 83:12–14.) Plus One's September 11 notice named "Amazon," "Intel," and "RealSense," and no one else (Decl. ¶ 3); that is why AIIA had no objection to it, and that is the only inference Plus One's "AIIA did not object" argument supports. (Dkt. 90 at 11.) The accommodation AIIA gave at the hearing was for those three vendors, whose components are accused; it has served its purpose and confers no continuing license to share AIIA's designated material with anyone else. Disclosure to a retained expert is governed exclusively by Paragraph 5(e). Plus One's own October 15 email applied Paragraph 5(e) to AIIA's expert. (Decl. ¶ 16.) A party that reads a ruling to displace the specific provision governing retained experts, for itself alone, and acts on that reading without asking the Court, acts "at [its] peril." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). Plus One sought clarification on October 20, six days after it had made the disclosure. (Dkt. 74.)

**III. "Not confidential" is no defense; the designation stands until Paragraph 18 is used.**

Plus One's final argument is that AIIA "has not shown that its contentions are confidential." (Dkt. 90 at 12.) That is an argument for a different motion. The Protective Order sets the procedure for challenging a designation: a written request, a meet-and-confer within five business days, and a motion within ten days thereafter, on which "the burden shall be on the designating Party to show why its classification is proper." (Dkt. 27-1 ¶ 18.) Plus One has never used it; it now says it "seeks a finding that AIIA's contentions contain nothing confidential" so that it may "post the contentions online and share them without any restriction" (Ex. E at 8–9), which is the relief Paragraph 18 exists to channel. Until Plus One uses that procedure, the designation stands, and the Order governs disclosure: it applies to "all documents … designated," and "[a]ll copies, reproductions, extracts,

digests and complete or partial summaries prepared from any DESIGNATED MATERIALS" are themselves designated. (*Id.* ¶ 3.) A receiving party may not decide for itself that designated material is public and hand it to an unapproved expert. The Court has already ruled that the contentions remain "under seal until the Markman hearing." (Dkt. 71 ¶ 3.) Its authorities are about something else: *June Medical*, as Plus One quotes it, concerns public access to "the judicial record," and *Patterson* denied entry of a protective order. (Dkt. 90 at 12–13.) Here a protective order was entered on the parties' stipulation (Dkt. 28), and the question is compliance with it. Nor is AIIA's burden under Paragraph 5(e) a burden to prove trade secrets; it is the burden to show "the need for a protective order" as to a proposed disclosure to a particular expert (Dkt. 27-1 ¶ 5(e)), and the need is shown by the disclosure itself: the material is AIIA's element-by-element claim mapping across 27 asserted claims (Decl. ¶ 36), given to the expert retained to attack those claims on claim construction and indefiniteness (Decl. ¶ 6), before any vetting. *Wapp Tech*, which Plus One cites, recognizes that a party's "strategies in the litigation" are confidential (Dkt. 79 at 13–14); its result turned on a conflict the movant could not prove, not on a disclosure the receiving party admits.

**IV. AIIA stated its objections to Prof. Bretl in writing within the ten days; Plus One has never answered them.**

Plus One says AIIA "identifies no conflict" and "has had every opportunity to vet him." (Dkt. 90 at 10–11.) AIIA stated its objections in writing, within the ten days Paragraph 5(e) provides, and Plus One has answered none of them. On October 14, AIIA asked for the ten days "to vet your expert for conflicts" and for the expert's complete CV and information. (Decl. ¶ 12 & Ex. A, Tabs 19, 22.) On October 15, it asked for his prior engagements and his Undertaking. (Decl. ¶ 16.) On October 19, in the letter Plus One itself cites, AIIA objected to Prof. Bretl serving as an expert in this case and stated why: his CV lists him as "Co-Founder, Chief Innovation Officer, and

Secretary, Reconstruct Inc," a computer-vision and artificial-intelligence company and a competitor of AIIA; Paragraph 5(e)(2) bars disclosure to an expert "presently employed (directly or indirectly) by a competitor of a Party"; Plus One had not disclosed whether Prof. Bretl, as a co-founder, retains any equity, advisory, or other continuing relationship with Reconstruct; his published and current research, including vision-based six-dimensional pose estimation, structure-from-motion evaluation, and three-dimensional visual representations for robotic manipulation, lies in the field of the patents-in-suit and in areas AIIA continues to research; and the CV served on October 9 omits the list of "all current and past expert engagements with any parties in the past five years" that Paragraph 5(e) requires. (Dkt. 84-6 at 12; Decl. ¶ 7; Dkt. 27-1 ¶ 5(e).) Plus One's lightning disclosure left no opportunity for AIIA to seek answers before disclosure. AIIA reserved further objections pending the information Plus One had not provided. (*Id.*; Dkt. 79 at 15.)

Plus One's only answer, sent at 1:35 a.m. on October 20 and repeated in Dkt. 90, is that a role that ended "a decade ago" is not "present" employment, and that AIIA has not shown that Prof. Bretl "owes Reconstruct any duty of loyalty." (Decl. ¶ 30; Dkt. 90 at 10.) That answers a question AIIA did not ask. Paragraph 5(e)(2) reaches employment "directly or indirectly," and Paragraph 9 bars access by "employees, affiliates, or directors" of "a competitor of a Party." (Dkt. 27-1 ¶¶ 5(e), 9.) The question AIIA asked is whether a co-founder, chief innovation officer, and secretary of a competitor retains any continuing interest in it. Plus One has never said, and a "duty of loyalty" test appears nowhere in the Order. The ten-day period exists so that the producing party can ask that question and have it answered before access. It was not "fully served" (Dkt. 90 at 11) by a disclosure made before the question could be asked and a refusal to answer it afterward; under Paragraph 5(e), "[n]o disclosure shall occur until all such objections are resolved by agreement or Court order," and they have been resolved by neither. Plus One applied the opposite standard to

AIIA's expert: in March 2026 it objected to Dr. Janét "based at least on his relationship with" Applied Research Associates, citing the "overlap" in "areas of focus and business," and AIIA withdrew him. (Dkt. 84-6 at 12.) An overlap in fields disqualified AIIA's expert; the same overlap, with a co-founder's role at a competitor and an unanswered question about whether it continues, is said to raise nothing.

**V. Plus One demanded the same protocol from AIIA in March 2026, and said there was no prejudice until AIIA moved.**

Plus One's own Exhibit A answers its "no harm" argument. (Dkt. 90 at 11.) In March 2026, when AIIA's counsel mentioned that an expert had reviewed what Plus One had provided, Plus One wrote: "Please immediately identify the expert in question and all the Plus One documents that AIIA allowed its undisclosed expert to review before Plus One was allowed to consider conflicts." (Dkt. 90-2 at 4.) The next day it added: "We also await confirmation that the expert has destroyed all copies that they received of such files, as well as any related notes or other derivative materials prepared." (*Id.* at 2.) Plus One did not ask whether the material was confidential or whether the expert had a conflict; it demanded identification, a list of documents reviewed, and certified destruction, because the vetting had not occurred. AIIA complied then, and has said so to Plus One. (Dkt. 90-3 at 3; Dkt. 94-1 at 3.) Plus One now says that identification, destruction, and non-use are a "drastic remedy with no corresponding harm to cure," and that AIIA "has suffered no prejudice." (Dkt. 90 at 11, 12.) Those statements were made while Plus One's expert had AIIA's theories and AIIA had none of Plus One's. The protocol Plus One demanded in March is the minimum relief AIIA asks for now. (Decl. ¶¶ 4, 12, 14, 16.) The pattern is not new: in July Plus One moved on two days' notice to unseal AIIA's contentions, bypassing the ten-day procedure of Paragraph 18. (Dkt. 43; Dkt. 48 at 1–3.)

**VI. The remedy.**

At a minimum, the Court should order what Plus One itself demanded in March: identification of each AIIA document provided to Prof. Bretl and the date of each disclosure; a certification of destruction and non-use signed by Prof. Bretl and counsel; an order that no AIIA-designated material or anything derived from it be used pending compliance with Paragraph 5(e); a substitute expert, if Plus One wishes one, disclosed under Paragraph 5(e) with the ten-day period and objection procedure honored; and the expenses caused by the breach, limited to the fees the breach caused. Fed. R. Civ. P. 16(f)(2), 37(b)(2)(C); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017). None of this requires a finding of willfulness or contempt. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488, 490 (5th Cir. 2012). The Court should also order that Prof. Bretl is subject to the Protective Order, and to the Court's jurisdiction to enforce it, as to every item of AIIA-designated material disclosed to him on or after October 14, 2026, so that whatever else the Court decides, the material he holds is held under the Order and not outside it.

Disqualification remains warranted. Plus One frames the question as whether AIIA has proved a conflict. (Dkt. 90 at 10–11.) The Motion does not rest on a conflict; it rests on the breach, and on what the breach gave Plus One. Pre-access procedures are enforced as written, and after-the-fact compliance does not cure them. *Demodulation, Inc. v. United States*, 122 Fed. Cl. 652, 660–61 (2015); *Allergan, Inc. v. Sandoz Inc.*, No. 2:09-cv-97, 2011 WL 2563238, at *2–3 (E.D. Tex. June 28, 2011). Plus One distinguishes *Allergan* on the ground that it "timely disclosed Prof. Bretl." (Dkt. 90 at 12.) It did not: an October 9 identification of a claim-construction witness with no Undertaking is not a Paragraph 5(e) disclosure, and the Undertaking came two days after access. (Decl. ¶¶ 6, 15, 23.) The *Allergan* defendants pleaded an "inadvertent oversight"; Plus One acted over a written objection, and the next day enforced the same paragraph against AIIA. (Decl. ¶¶

12–16.) The record reasons for disqualification are these: the disclosure was deliberate and made while AIIA's meet-and-confer request was pending (Decl. ¶¶ 11, 15); Plus One has refused every request to identify, certify, or stop, on October 14, 16, 19, 20, 28, and 30 (Decl. ¶¶ 13, 17, 25, 32–34; Dkt. 90-3 at 2; Dkt. 94-2 at 2); and Plus One filed Dkt. 74 to obtain approval of the disclosure after the fact rather than cure it. The Court has "the inherent power to disqualify experts" to protect "the integrity of the judicial process." *Koch Ref. Co. v. Jennifer L. Boudreaux M/V*, 85 F.3d 1178, 1181–82 (5th Cir. 1996). If the party that bypasses Paragraph 5(e) keeps the expert and the material, the ten-day period becomes optional for anyone willing to disclose first and serve the Undertaking later. A protective order that can be breached and cured at the breaching party's convenience protects nothing. Opening briefs are not yet due, so substitution now imposes a modest burden; an unvetted expert holding the other side's sealed theories imposes a permanent one.

**VII. The prejudice is continuing, and no change to the schedule cures it.**

Plus One says AIIA "has suffered no prejudice." (Dkt. 90 at 12.) The prejudice is of three kinds, and each is continuing. First, what was disclosed cannot be recalled. AIIA's contentions chart 86 claim elements across 27 asserted claims; they are AIIA's claim mapping and infringement theories, its "strategies in the litigation." (Decl. ¶ 36; Dkt. 79 at 13–14.) Once read, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980); *accord In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). The reader here is the expert retained to attack those claims on claim construction and indefiniteness, whose current research lies in the same field. (Decl. ¶¶ 6–7.) Second, the asymmetry grows every day. Plus One's expert has held AIIA's element-by-element theories since October 14;

AIIA's expert, barred by Plus One under the same paragraph, has seen none of Plus One's designated material; and Plus One's invalidity, Section 112, and Section 101 positions, due October 7, are still unserved. (Decl. ¶¶ 5, 16, 34.) AIIA made its October 9 expert disclosure "being made to respond to indefiniteness contentions it has not yet seen" (Decl. ¶ 9), and every claim-construction position Plus One takes from here forward will be taken with AIIA's theories in its expert's hands and none of Plus One's in AIIA's. Third, the disclosure impairs the value of AIIA's patent assets. The Court sealed the contentions until the Markman hearing (Dkt. 71 ¶ 3), so AIIA controls when, to whom, and on what terms its claim mapping is revealed; Plus One now asserts the right to "post the contentions online and share them without any restriction." (Ex. E at 8–9.) The value of AIIA's patents depends in part on that control over its enforcement and licensing positions, and disclosure outside the Order impairs it in a way no later award repairs. (Dkt. 79 at 14.)

At the Dkt. 89 conference, AIIA proposed an amended schedule and the withdrawal of its own motions without prejudice, with two provisions: that Plus One's expert use AIIA's materials only subject to the Protective Order, whose protection extends to the October 14 disclosure, and that Plus One provide access to AIIA's materials only under the Order, each until the Court orders otherwise. (Exs. A–D; Ex. E at 12–13.) Plus One accepted the dates and refused both provisions, stating that AIIA "has never served proper infringement contentions," that it "seeks a finding that AIIA's contentions contain nothing confidential," that it may "post the contentions online," and that "this is a risk Plus One is willing to take." (Ex. E at 3, 8–9, 11.) After that email, Plus One circulated a revised two-section Joint Advisory with its own positions "already filled in," stated that "most (if not all) of these issues were already addressed in Docket No. 93," directed AIIA to "fill in AIIA's portion" by 11 a.m. CT, and at 10:04 p.m. stated that it had "nothing further to send."

(Ex. F at 1, 3.) AIIA responded that the Court ordered a joint filing, that Plus One's draft is not one, and that AIIA will note that and send its position. (Ex. F at 1.) Plus One's position is that it may disclose AIIA's Attorneys' Eyes Only material outside the Order's procedure, bring the recipient under the Order afterward, and treat the Order's limits on further disclosure as inapplicable to it. A change to the Scheduling Order does not cure a breach from which Plus One continues to gain an advantage, and the breach was willful: made one minute after a written objection, with the transcript in hand, and with the ten-day requirement in mind, as Plus One's invocation of it against AIIA the next day shows. (Decl. ¶¶ 12–16.)

**CONCLUSION**

AIIA respectfully requests that the Court sustain AIIA's objection and grant a protective order under Paragraph 5(e); disqualify Prof. Bretl, or, at a minimum, bar any further access to or use of AIIA-designated material by him; order Plus One, within three days, to identify each item disclosed and when and to serve a certification of destruction and non-use signed by Prof. Bretl and counsel; order that Prof. Bretl is subject to the Protective Order and to the Court's jurisdiction to enforce it as to all AIIA-designated material disclosed to him on or after October 14, 2026; confirm that the accommodation reflected in Dkt. 71 ¶ 3 was limited to the three vendors identified at the September 10 hearing and that any disclosure of AIIA-designated material to any other person, including any retained expert or consultant, is governed by the Protective Order; require any substitute expert to comply with Paragraph 5(e); award the expenses caused by the breach under Rules 16(f) and 37(b); and grant such other relief as the Court deems just.

Dated: November 4, 2026

Respectfully submitted,

*/s/ Robert E. Golden*
Robert E. Golden

Texas Bar No. 08085560
ROBERT E. GOLDEN, P.C.
14100 San Pedro Ave., Suite 611
San Antonio, TX 78232-4363
(210) 495-0900
golden@goldenlaw.net

Vivek Ramachandran (admitted pro hac vice)
DHAMMA LAW PLLC
418 Broadway, Suite N
Albany, NY 12207
(202) 860-4084
vramachandran@dhammalaw.com

*Counsel for Defendants/Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on November 4, 2026, the foregoing was filed through the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Robert E. Golden*
Robert E. Golden